Filed 3/30/21  P. v. Baltezor CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSEPH EMANUEL BALTEZOR,<br><br>    Defendant and Appellant. | F077646<br><br>(Super. Ct. No. VCF342263)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Gary L. Paden, Judge.

Scott Concklin, under appointment by the Court of Appeal, Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Timothy L. O'Hair, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted Joseph Emanuel Baltezor of multiple counts of sexual abuse of his daughter, S.B., including one count of oral copulation/sexual penetration with a child 10 years old or younger (count 2), 20 counts of lewd acts on a child under the age of 14 (counts 3-22), and one count of committing a lewd act upon a 14-year-old child who was at least 10 years younger than him (count 25). (Pen. Code,[1] §§ 288.7, subd. (b), 288, subds. (a) and (c)(1).) On appeal, Baltezor argues there was a lack of proof independent from his extrajudicial confessions or admissions as to numerous counts and/or insufficient evidence to support those convictions. He asserts the court prejudicially erred in inaccurately summarizing the victim's testimony. He further contends the court erred in instructing the jury with CALCRIM No. 207, which, he argues, permitted the jury to omit the age element of each offense. Baltezor alleges the court also erred in including a special instruction on sexual penetration and in instructing the jury with CALCRIM No. 302, which, he contends, lowered the prosecution's burden of proving the victim's age at the time of the offenses. He argues the court reversibly erred in failing to sua sponte instruct the jury on sexual penetration of a minor as a lesser included offense of count 2. Baltezor also challenges his sentence arguing certain sentences should have been stayed pursuant to section 654, the record did not support consecutive sentences for certain counts, and he contends the sentence on count 2 was unauthorized because it provided for "no credits." He also asserts his counsel provided ineffective assistance on numerous grounds. Finally, Baltezor contends the abstract of judgment erroneously lists a direct restitution award that was not supported by the trial court's oral pronouncement at sentencing.

We conclude insufficient evidence supports count 9 and, accordingly, reverse defendant's related conviction. We remand to the trial court for resentencing and for

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

further proceedings regarding victim restitution. In all other respects, we affirm the judgment.

## FACTUAL BACKGROUND

Baltezor was charged with multiple counts of sexual abuse of his biological daughter, S.B.

## I. Prosecution Case

### A. Initial Disclosure

At trial, Baltezor's former wife Stacy testified she learned Baltezor was molesting S.B. in October 2016. Stacy saw S.B. get dropped off at the house by a car Stacy did not recognize. Stacy asked S.B. about it and also asked S.B. why she had been distant from Baltezor. S.B. then reported to Stacy that she hated Baltezor because he had been touching her for a long time and had been looking through her window all the time. Stacy confronted Baltezor, but he denied S.B.'s allegations. However, the next day, he admitted some of the allegations were true and he turned himself into the police.

### B. S.B.'s Reports of Abuse

S.B., who was born on December 31, 1999, was 18 years old at the time of trial. She testified Baltezor molested her between 50 and 100 times. One of the earliest incidents occurred when S.B. was in the fourth grade. She testified "it would happen at least once a week" when she was around nine years old or in the fourth or fifth grade. The molestation became more frequent when S.B. was in the sixth or seventh grade and her body started developing. S.B. believed Baltezor last touched her when she was in the ninth grade, but Baltezor had looked through her window and watched her get dressed after that.

S.B. reported Baltezor touched her once when they were in the same bed as Stacy. Baltezor put his finger in S.B.'s "butt" and she cried because it hurt but she "just let him do it." S.B. explained Baltezor would touch her vagina with his hands both over and under her clothing. When asked whether Baltezor would touch her vagina with his hand

3

during each of the 50 or more incidents she described, S.B. responded, "Pretty much or … he would touch my boobs." She testified Baltezor touched her "boobs" approximately 20 times when she was in the seventh or eighth grade; he would grab or squeeze them. S.B. remembered a time when she wanted to go to a friend's house and Baltezor told her she could not go unless she showed Baltezor her "boobs" and let him touch them for a certain amount of time; so, she lifted up her shirt and he touched her "bare boobs."

S.B. recalled a time she was sleeping and it "could have been a dream or a nightmare," she was "not sure," but when she woke up Baltezor "was putting his penis on [her] vagina, but it didn't go in." She started crying and left the room, but Baltezor coaxed her back. S.B. believed her clothes were on at the time but could not recall if defendant was wearing pants. She also remembered Baltezor telling her that his goal was to "make [her] come" as he moved his hand around when she was in the sixth grade. S.B. estimated she was 10 or 11 years old in the sixth grade but later clarified she was 11 years old when she started sixth grade and 12 years old when it ended. S.B. testified that once when she was in the sixth grade, Baltezor tried to put his hand "in the hole," but she told him not to and that it hurt. S.B. also recalled a time Baltezor touched her vagina with his mouth. Baltezor told her he was going to "smell it" and he put his head there and "put his mouth on it real quick," but S.B. pushed him away and he stopped. S.B. explained many times Baltezor would "start" by rubbing her feet or legs and then move up to massage her legs until he got to her vagina, and then he would touch her vagina.

S.B. recalled an incident when she was older, in the eighth or ninth grade, when Baltezor showed her an "app" on his phone called "Kamasutra" that depicted sex positions and said " '[l]et's act these out.' " She also recalled a specific incident when Baltezor would not let her go school shopping unless she sat straddled on top of him. So, she sat on top of him as he lay on the bathroom floor.

4

### C. Defendant's Extrajudicial Confession

Sergeant Mike Verissimo was the on-call violent crimes detective and assisted in the investigation after Baltezor came forward to confess. Sergeant Verissimo spoke to S.B. and Stacy and then conducted a recorded interview with Baltezor. The recorded interview was played for the jury.

In the interview, Baltezor reported S.B. was around nine years old when the molestation started, and he touched her "[q]uite a few" times, weekly or every other week. Baltezor explained he started to touch S.B. more often when S.B. got older, when she was approximately 12 years old and "started developing." He estimated he touched S.B. 10 or 11 times when S.B. was nine years old and approximately the same amount of times when she was 10 and 11 years old. Baltezor believed the frequency stayed the same as S.B. got older. According to Baltezor, S.B. did not resist other than one time when he asked her to show him her breasts when she was older, but he coaxed her to do it by offering to buy her Starbucks.

Baltezor recalled the first time he touched S.B. they were watching television when he started touching her vagina over her clothes. He became "infatuated," "maybe obsessed" with S.B. Baltezor explained he would give S.B. a massage on her legs and end up looking at her vagina.

Baltezor reported he was afraid his father or someone else in his father's house was touching S.B. and he used that as "an excuse" to check, touch, and look at S.B.'s vagina to make sure "nothing had happened to it." Baltezor denied ever inserting his finger into S.B.'s vagina but admitting touching the surface of it and pulling the vaginal lips apart. Baltezor recalled an incident when his wife was not home and he rubbed S.B.'s vagina while they laid in bed. He reported smelling S.B.'s vagina that time and that his nose touched S.B.'s vagina. Baltezor recalled a separate instance when he kissed S.B.'s vagina after massaging her legs and working his way up. He also recounted a specific incident when they were in a hotel room when they went to Knott's Berry Farm.

5

Baltezor was laying on the bed with S.B. with his wife beside him, and he inserted his finger in S.B's bottom. He also recalled a "Kama Sutra" incident which he asked for in exchange for giving S.B. money for school clothes. Baltezor asked S.B. to do positions as he laid on the floor in the bathroom and he also showed S.B. his penis. He also recalled buying S.B. coffee in exchange for the "favors" she did for him. He recalled the last time something happened was when S.B. was 12 or 13 years old and her face looked like she felt violated, so, he stopped. Baltezor explained S.B. began to pull away from him when she was 13 years old and she did not want to have anything to do with him. He denied looking at S.B. through the window or ever masturbating in front of her. Following the presentation of Baltezor's interview and the related testimony of Sergeant Verissimo, the People rested.

**D.** **Defendant's Motion to Dismiss**

After the close of the People's case, defense counsel moved to dismiss numerous counts pursuant to section 1118.1. With respect to count 1, which involved oral copulation with a child who is 10 years of age or younger, defense counsel argued there was no evidence S.B. was 10 years old or younger when the alleged conduct occurred. Defense counsel argued there was no evidence in S.B's statement regarding how old she was when Baltezor kissed her vagina and Baltezor's statement in which he said she was "[t]en or so" was "just an estimate." Accordingly, defense counsel argued "corpus" had not been shown through any evidence other than Baltezor's statement that the alleged crime occurred. The court stated it did not have a date but S.B. testified Baltezor placed his mouth on her vagina and she pushed his head away. The court denied the motion as to count 1.

With respect to count 2, which involved alleged sexual penetration with a child who is 10 years of age or younger, defense counsel argued there was no evidence Baltezor "put his hand anywhere near the inside of [S.B.'s] vagina." The prosecutor

6

responded the "People's special instruction shows it does not require actual penetration of the vaginal opening," but rather the genital opening. The prosecutor argued the testimony regarding Baltezor " 'checking' " S.B.'s vagina supported the count. The court denied defense counsel's motion as to count 2. However, it concluded it did not see evidence any of the alleged incidents were forced. Accordingly, it struck the allegations in counts 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, and 22, that they were forcible and reduced them to violations of section 288, subdivision (a).

Defense counsel argued with regard to counts 12-14, which related to touching of S.B.'s "butt," there was only evidence of one incident. The court responded Baltezor admitted rubbing S.B.'s "butt" but did not say how many times. Accordingly, it would leave it to the jury to decide.

With regard to count 18, which related to an incident when S.B. "straddled and sat on [Baltezor]," defense counsel asked the court to strike the allegation entirely or "make it a 288(c)." Defense counsel asserted S.B. "said that she was in the 8th or 9th grade, which would put her anywhere from 13 to 15," so there was no evidence but for Baltezor's statement that she was under 14 years old at the time. Accordingly, defense counsel asserted he did not think corpus was established on that count. The court however stated Baltezor reported S.B. was about 10 years old when she posed naked for him and he laid on the floor and had her straddle him. It denied Baltezor's motion on that basis. The court also denied the motion as to count 19 based on evidence of Baltezor rubbing S.B. and/or massaging her legs, which led up to him touching her vagina.

Defense counsel also argued corpus had not been met with the counts related to breast touching because there was insufficient evidence S.B. was under 14 years old when that occurred. With regard to count 22, the prosecutor argued the crime required either that Baltezor touch the child or have the child touch herself. So, having S.B. lift her shirt to expose her breasts was sufficient to establish the count. Defense counsel

argued he did not believe there was testimony S.B. touched her breasts and also submitted that S.B. said this happened in seventh or eighth grade. He asserted "in 8th grade [S.B.] would have been both 13 and 14 [years old]" so a reasonable jury could not find this proof beyond a reasonable doubt that she was under 14 years old when this happened Additionally, he argued S.B. only testified this happened so, "at the very least [counts] 23 and 24 … should be dismissed." The court agreed and dismissed counts 23 and 24.

### E.  Defense Case

The defense briefly called S.B. to the stand and asked her when Baltezor smelled her vagina and eventually put his mouth on it. S.B. stated she did not recall and defense counsel then attempted to refresh S.B.'s recollection with a transcript of her out-of-court interview with Sergeant Verissimo. After reviewing her statement in the interview, S.B. testified the incident occurred when she was 13 or 14 years old. On cross-examination, S.B. explained she was guessing in the previous interview when she said the incident occurred when she was 13 or 14 years old.

Baltezor testified on his own behalf. He acknowledged most of what S.B. testified about was true. He testified he "pretty much [knew] exactly whenever [the molestation] happened. It happened after [Baltezor] had found out that [his] wife had had an affair [in May 2011] and it ended whenever [S.B.] was about 12 years old." Before that, the only incidents that happened were the "checking" incidents when he would "check" S.B.'s vagina for signs of molestation by her grandparents when S.B. was nine or 10 years old. Baltezor testified that, during those incidents, his hands were on the middle of S.B.'s thighs and never higher. He believed the incident when he kissed S.B.'s vagina occurred when she was 13 or 14 years old as S.B. reported. Baltezor denied ever trying to put his finger inside S.B.'s vagina.

8

On cross-examination, the prosecutor confirmed with Baltezor his belief that the touching stopped when S.B. was 12 years old and asked him to explain his testimony that he kissed S.B.'s vagina when she was 13 or 14 years old. Baltezor stated he was "not really sure of the ages."

### F. Verdict

The jury convicted Baltezor of one count of oral copulation/penetration with a child 10 years old or younger (count 2), 20 counts of lewd acts on a child under the age of 14 (counts 3-22), and one count of committing a lewd act upon a 14-year-old child who was at least 10 years younger than him (count 25). (§§ 288.7, subd. (b), 288, subds. (a)(1) & (c)(1).)

## DISCUSSION

### I. Alleged Lack of Corpus Delicti of Each Count

Baltezor first contends there was insufficient independent evidence to establish the corpus delicti of numerous counts.

### A. Standard of Review and Applicable Law

"The corpus delicti rule requires that the corpus delicti of a crime be proved independently from an accused's extrajudicial admissions. [Citations.] 'The corpus delicti of a crime consists of two elements, the fact of the injury or loss or harm, and the existence of a criminal agency as its cause.' " (*People v. Jennings* (1991) 53 Cal.3d 334, 364 (*Jennings*).)

"The purpose of the corpus delicti rule is to assure that 'the accused is not admitting to a crime that never occurred.' [Citation.] The amount of independent proof of a crime required for this purpose is quite small; we have described this quantum of evidence as 'slight' [citation] 'minimal' [citation]. The People need make only a prima facie showing ' "permitting the reasonable inference that a crime was committed." ' [Citations.] The inference need not be 'the only, or even the most compelling, one ... [but

9

need only be] a *reasonable* one ....' " (*People v. Jones* (1998) 17 Cal.4th 279, 301-302 (*Jones*).)

At least one court has held "separate evidence is not required as to each individual count to establish the corpus delicti; rather, evidence that multiple molestations took place will establish the corpus delicti for multiple counts." (*People v. Tompkins* (2010) 185 Cal.App.4th 1253, 1260 (*Tompkins*).)

### B.    Analysis

Baltezor asserts "the *corpus delicti* rule protects people from suffering convictions based on their own unsubstantiated confessions by requiring the People to establish the commission of each offense with evidence independent of the defendant's extrajudicial admissions." He contends S.B. was the only witness who gave independent evidence of the charged crimes, but her testimony failed to corroborate that certain offenses occurred (counts 2, 11, 13, 14, or 25) or that she was under the age of 14 when certain crimes occurred. He also asserts S.B.'s testimony failed to establish count 2 occurred when she was under the age of 11. We address Baltezor's contentions as to each count in turn.

### (1)    Count 2

Baltezor first contends the prosecutor argued count 2 was based on the incidents Baltezor discussed during which he would "check" S.B.'s vagina for evidence of abuse. He asserts S.B., however, never testified about the alleged "checking" incidents or stated Baltezor touched her vagina when she was under the age of 11 years old. She also did not testify Baltezor penetrated her vagina when she was that age. Rather, "[t]he People's theory that [Baltezor] penetrated [S.B.'s] genital opening while 'checking' was based entirely on [Baltezor's] statement." The People respond S.B.'s "testimony, establishing that [Baltezor] touched her in a sexual manner 50 to 100 times beginning when she was 9, and that he touched her vagina more than 10 times and attempted to penetrate her when

10

she was 10 or 11, was more than sufficient to establish [the] corpus delicti" as to count 2. We agree with the People.

The California Supreme Court has noted it has never interpreted the corpus delicti rule "so strictly that independent evidence of every physical act constituting an element of an offense is necessary. Instead, there need only be independent evidence establishing a slight or prima facie showing of some injury, loss or harm, and that a criminal agency was involved." (*Jones, supra,* 17 Cal.4th at p. 303.) It has held the corpus delicti of a specific sexual assault crime can be established through circumstantial evidence that *some* sexual activity occurred and that the activity was criminal. (See *Jones*, *supra*, 17 Cal.4th at p. 302 [concluding though there was no independent evidence of oral copulation, corpus delicti of forcible oral copulation charge was established where state of victim's clothing and semen on her vagina, external genitalia, and anus indicated multiple sexual acts occurred and evidence victim was forcible abducted, beaten, shot in the head, and left by road gave rise to inference sexual activity was against victim's will]; *Jennings*, *supra*, 53 Cal.3d at pp. 366-367 [concluding though evidence of rape was "minimal," that victim's body reflected broken jaw and was found decayed and unclothed in an irrigation canal provided inference some sexual activity occurred against her will which was sufficient to establish corpus delicti of rape]; *People v. Robbins* (1988) 45 Cal.3d 867, 886 [corpus delicti of lewd and lascivious conduct charge established through independent evidence defendant was seen riding motorcycle in area of victim's disappearance; victim was seen on a motorcycle with a man matching defendant's description; no clothes were found at scene of crime; defendant's expert diagnosed him with pedophilia; scientific evidence of similar Texas crimes was admitted; and physical evidence supported reliability of defendant's confession despite lack of scientific evidence of crime or eyewitnesses].) Indeed in *Jones*, the court expressly rejected the defendant's argument "that the lack of evidence of the *specific* loss or harm," i.e., the fact

11

that no semen was found in the victim's mouth, was "fatal to the establishment of the corpus delicti" of forcible oral copulation. (*Jones*, *supra*, 17 Cal.4th at p. 302.)

In *People v. Sanchez* (2016) 246 Cal.App.4th 167 (*Sanchez*), as here, the defendant challenged the sufficiency of the evidence, independent of the defendant's confession, to establish the corpus delicti of sexual penetration with a child who is 10 years of age or younger (§ 288.7, subd. (b)). (*Sanchez, supra,* at p. 176.) In *Sanchez*, the defendant confessed to penetrating an eight-year-old victim's vagina with his finger while giving her a piggyback ride and attempting to penetrate her vagina with his penis while on the bed. (*Id.* at p. 172.) He also confessed to touching a 10-year-old's vagina and chest over her clothes. (*Id.* at p. 171.) The eight-year-old only reported and testified about the incident during which defendant attempted to touch her vagina on the bed, and there was no other direct evidence of "the specific prohibited act occurred," i.e. digital penetration. (*Id.* at pp. 174, 176.) Applying the principles set forth in *Robbins*, *Jennings*, and *Jones*, the *Sanchez* court held the corpus delicti of the offense had been established through direct and circumstantial evidence of the other sexual activity engaged in by the defendant against the eight-year-old that was criminal in nature. (*Sanchez, supra,* at p. 177.) Such evidence was sufficient to provide a prima facie showing of injury, loss or harm by a criminal agency, such that defendant's confession could be considered for its full value to fill in the precise nature of the crimes committed against the victim. (*Ibid.*)

Similarly, here, there was independent evidence, namely S.B.'s testimony, establishing a showing of some injury, loss or harm, when she was under the age of 11 that was criminal in nature. S.B. expressly testified Baltezor molested her more than 50 times starting when she was in the fourth grade. S.B. explained "it would happen at least once a week" when she was around nine years old in the fourth or fifth grade. S.B. stated Baltezor would touch her vagina with his hands both over and under her clothes or touch her "boobs" during each of the 50 incidents of molestation she described. S.B.'s

testimony regarding the sexual activity Baltezor committed against her when she was under the age of 11 " ' "permit[ed] the reasonable inference that a crime was committed." ' " (See *Jones*, *supra*, 17 Cal.4th at pp. 301-302.) Accordingly, Baltezor's confession could be "considered for its full value to fill in the precise nature of the crimes committed against [the victim]." (*Sanchez*, *supra*, 246 Cal.App.4th at p. 177.)

Baltezor's reliance upon *People v. Nankervis* (1960) 183 Cal.App.2d 744 (*Nankervis*) is misplaced. The *Nankervis* court concluded the corpus delicti of the charged violation of section 288 had not been established because there was no independent evidence any alleged criminal act was committed against the victim when she was under 14 years of age. (*Nankervis, supra,* at p. 751.) While there was independent proof to support the charge the defendant had intercourse with the victim when she was 14 years old—a doctor testified her evaluation of the victim reflected she had been the subject of forced intercourse—there was no proof, independent from the defendant's admissions, that he engaged in any other sexual act with the victim as charged before she was 14 years old. (*Id*. at pp. 751-752.) Because there was no prima facie proof the victim had been the subject of any criminal sexual act, other than that of sexual intercourse, the confessions by the defendant regarding his other sexual acts against her when she was under 14 years old were insufficient to support his conviction for a violation of section 288. (*Id*. at p. 752.) Notably, the victim did not testify regarding the alleged sexual acts committed by defendant with her. (*Id*. at p. 751.)

Here, unlike in *Nankervis*, S.B. testified to significant sexual abuse by Baltezor when she was under the age of 11. Thus, there was prima facie, independent proof she had been the subject of multiple criminal sexual acts during the requisite time period. Thus, *Nankervis* is inapposite. Rather, we conclude there was sufficient evidence to establish the corpus delicti of count 2.

13

### (2) Counts 3 - 5

Baltezor next contends there was insufficient evidence independent of his confessions to support the corpus delicti of his convictions of counts 3-5, for violations of section 288, subdivision (a) based on the alleged "checking" incidents. He contends there was no independent evidence of him "checking" S.B.'s vagina or of his mens rea as necessary to substantiate the charges. Relying on *Tompkins, supra,* 185 Cal.App.4th 1253, the People contend separate evidence was not required to establish the corpus delicti of each individual count. They assert S.B.'s testimony that Baltezor molested her between 50 and 100 times beginning when she was nine years old and that at least 10 of those times involved him touching S.B.'s vagina was sufficient to establish the corpus delicti.

We conclude S.B.'s testimony that Baltezor began molesting her when she was in the fourth grade and that it occurred approximately every other week and involved touching of her vagina and breasts provided the " 'slight' " proof necessary to permit a reasonable inference that counts 3-5 were committed and that they were committed with the requisite mental state. (See *Jones*, *supra*, 17 Cal.4th at pp. 301-302.) In so concluding, we note the prosecution did not have to present direct evidence of the specific alleged prohibited act, i.e. the alleged "checking." (See *id.* at p. 303 ["we have never interpreted the corpus delicti rule so strictly that independent evidence of every physical act constituting an element of an offense is necessary. Instead, there need only be independent evidence establishing a slight or prima facie showing of some injury, loss or harm, and that a criminal agency was involved"]; *Sanchez*, *supra*, 246 Cal.App.4th at pp. 176-177 ["direct evidence, aside from defendant's confession, that the specific prohibited act occurred" is not required; corpus delicti satisfied when there is circumstantial evidence of *some* criminal sexual activity].) Accordingly, we reject defendant's challenge to the evidence establishing the corpus delicti as to these counts.

### (3)  Count 9

Baltezor next asserts the prosecution failed to establish sufficient independent evidence he put his penis to S.B.'s vagina, the alleged act giving rise to count 9 for a lewd act upon a child in violation of section 288, subdivision (a).  He asserts S.B.'s testimony in which she stated the alleged incident giving rise to the charge might have been a dream was insufficient to establish the alleged crime was committed or that she was under the age of 14 as required when the act allegedly occurred.  The People assert defendant's challenge to the corpus delicti of this count need not be addressed because they concede, post, insufficient evidence supports defendant's conviction for count 9 and it must be reversed.  We agree with the People; because we reverse this count based on insufficient evidence, we do not address Baltezor's challenge to the corpus delicti.

### (4)  Counts 10 - 11

Baltezor next contends he was charged in counts 10 and 11 with violating section 288, subdivision (a), based on allegations he touched the victim's vagina with his mouth and nose, respectively.  He contends the corpus delicti was not established for either count because there was insufficient independent evidence the incidents occurred when S.B. was under the age of 14.  He also asserts the corpus delicti was lacking on count 11 because S.B. only claimed his mouth contacted her vagina, but she said nothing about his nose.  The People respond S.B. testified during one of the 50 to 100 incidents of molestation, Baltezor tried to smell her vagina and, during that incident, he touched it with his mouth.  They argue such evidence "viewed as a whole" was sufficient to establish the corpus delicti of counts 10 and 11.

Again, we conclude there was sufficient independent evidence to establish the corpus delicti of these counts based on S.B.'s testimony.  S.B. testified when she was 13 or 14 years old, Baltezor told her he was going to "smell" her vagina.  S.B. told him she did not want him to, but Baltezor put his mouth on her vagina before S.B. pushed him

15

away.  Such testimony was sufficient independent evidence of counts 11 and 12.  Though S.B. did not expressly testify Baltezor touched his nose to her vagina, the jury could reasonably infer such a crime was committed based on S.B.'s testimony Baltezor tried to smell it.  Additionally, her testimony that she was 13 or 14 at the time sufficiently provided some independent evidence S.B. was under 14 years of age when the incident occurred.  There is no requirement such evidence be conclusive such that it establishes the crime occurred beyond a reasonable doubt.  (See *Jones*, *supra*, 17 Cal.4th at p. 301 [independent evidence can be circumstantial and "need not establish the crime beyond a reasonable doubt].)  Accordingly, we reject Baltezor's challenge to the corpus delicti of counts 10 and 11.

### (5) Counts 12 - 14

Baltezor next contends the corpus delicti for count 12, which alleged Baltezor touched S.B.'s buttocks for the first time when she was under the age of 14 in violation of section 288, subdivision (a), was not established because there was no independent evidence S.B. was under the age of 14 when this occurred.  Baltezor next argues counts 13 and 14, which related to allegations Baltezor touched S.B.'s buttocks a second and third time, were not supported by independent evidence as required to establish the corpus delicti of these counts.  He argues S.B. expressly denied Baltezor touched her buttocks more than once.  Therefore, there was no evidence independent of Baltezor's statements that such touching occurred.  The People respond S.B.'s testimony that Baltezor began repeatedly sexually abusing her when she was nine years old until she was in the ninth grade was sufficient to establish the corpus delicti of count 12.  They further contend with regard to counts 13 and 14 that S.B. simply disclaimed Baltezor put his finger in her buttocks more than once, but she did not deny additional touching had occurred.  And her statement Baltezor would massage her " 'legs all the way up until he

16

got to [her] vagina' " was sufficient to permit a reasonable inference Baltezor touched her buttocks in support of these counts.

As discussed, contrary to Baltezor's contention, the prosecutor was not tasked with producing direct evidence of the specific alleged prohibited conduct. (See *Jones*, *supra*, 17 Cal.4th at p. 302 [rejecting argument lack of evidence of the *specific* loss or harm to victim is fatal to establishment of corpus delicti; "[t]he law's requirements … are not so strict"]; *Sanchez*, *supra*, 246 Cal.App.4th at pp. 176-177 [direct evidence, aside from the defendant's confession, that the specific prohibited act occurred is not required].) Rather, we agree with the People that the cited testimony was sufficient to establish the corpus delicti of counts 12-14; Baltezor committed numerous sexual assaults against S.B. when she was under the age of 14 and, from the presented evidence, the jury could reasonably infer such touching included the charged conduct. That is, there was "independent evidence establishing a slight or prima facie showing of some injury, loss or harm, and that a criminal agency was involved" as necessary for these counts to survive. (See *Jones*, *supra*, 17 Cal.4th at p. 303.) Accordingly, we reject Baltezor's challenge to the corpus delicti of counts 12 through 14.

### (6)     Counts 15 - 17

Baltezor next argues counts 15 through 17, which charged him with touching S.B.'s breasts when she was under the age of 14, were not supported by sufficient independent evidence of S.B.'s age when the alleged touching occurred. We disagree.

Rather, we again conclude S.B.'s testimony provided the "slight" proof necessary to permit a reasonable inference that counts 15-17 were committed before S.B. turned 14 years old. (See *Jones*, *supra*, 17 Cal.4th at pp. 301-302.) S.B. stated Baltezor began molesting her when she was in the fourth grade and that it occurred approximately every other week, and the molestation involved touching of her vagina and breasts. She also testified Baltezor touched her "boobs" approximately 20 times when she was in the

17

seventh or eighth grade; he would grab or squeeze them. Such testimony was sufficient to establish the corpus delicti with respect to these counts.

### (7) Count 18

Baltezor next asserts insufficient independent evidence established the age element of count 18 for a lewd act against a child under the age of 14; thus, the corpus delicti was not established. He contends count 18 related to the "Kama Sutra" incident during which Baltezor asked S.B. to sit on top of him. Baltezor notes S.B. also discussed the incident but her equivocal testimony regarding when the incident occurred was insufficient to establish the corpus delicti. We disagree. S.B. testified she "was probably [in] 8th or 9th grade. Maybe a little younger too" when she viewed the "Kama Sutra" application on Baltezor's phone. Such evidence, in addition to S.B.'s testimony Baltezor abused her over 50 times beginning when she was in the fourth grade until she was in the ninth grade, was sufficient to establish the corpus delicti for count 18.

### (8) Count 22

With regard to count 22, which related to an incident when Baltezor asked S.B. to lift her shirt and expose her breasts, Baltezor contends the independent evidence established that this incident occurred sometime in the 7th or 8th grade, between the ages of 12 and 14. Accordingly, Baltezor asserts S.B.'s testimony only established that this incident occurred before she was 15 years of age, not under the age of 14 as required. We again disagree the corpus delicti was not established as to this count.

As discussed, the independent evidence of the alleged crime did not need to establish it occurred beyond a reasonable doubt. And here there was some evidence from which the jury could infer count 22 occurred. Indeed, S.B. expressly testified to this incident and provided some testimony it occurred during the requisite time frame. Such direct evidence was more than sufficient to establish the corpus delicti of this count.

18

### (9)    Count 25

Finally, Baltezor argues there was no evidence to support count 25, which charged Baltezor with violating section 288, subdivision (c)(1), based on the allegation that he put his hand on her vagina when she was 14 years of age.  Baltezor contends neither S.B. nor Baltezor testified touching occurred when S.B. was 14 years old.  Thus, he contends, the corpus delicti of this count was not established.

We conclude sufficient evidence established the corpus delicti of this count.  S.B. testified Baltezor continued to touch her until she was in the ninth grade, during which she was 14 and 15 years old.  She explained, during every incident, the touching involved touching of her breasts or vagina, and the touching occurred every week and became more often as she started developing.  Such testimony was sufficient to establish the corpus delicti of count 25.

Accordingly, we reject Baltezor's first contention.

## II.    Sufficiency of the Evidence

Alternatively, Baltezor argues insufficient evidence supports his convictions.

### A.    Standard of Review

On appeal, the relevant inquiry governing a challenge to the sufficiency of the evidence " 'is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055.)  The reviewing court's task is to review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Bolin* (1998) 18 Cal.4th 297, 331; *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

We "presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis … is there sufficient substantial evidence to support" ' the jury's verdict." (*Ibid.*)

"In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. (*Ibid.*) Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*Ibid.*) " ' " '[A]lthough an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " ' " (*People v. Dalton* (2019) 7 Cal.5th 166, 209.)

### B.    Analysis

Defendant challenges the sufficiency of the evidence in support of each of his convictions. We agree with defendant's contentions with regard to count 9 and, accordingly, reverse his conviction on that basis. We find no merit to defendant's remaining challenges to the sufficiency of the evidence.

### (1)     Count 2:  Penetration of a Child 10 Years of Age or Younger

Baltezor first contends insufficient evidence supports his conviction of count 2 for sexually penetrating a child 10 years of age or younger in violation of section 288.7, subdivision (b).  He asserts he denied penetration occurred while he "checked" S.B.'s vagina, and there was no evidence to support the conviction.  Rather, he argues, the prosecutor's theory that penetration could be inferred from the way Baltezor described his actions was "based on speculation."  The People respond the jury could reasonably find Baltezor penetrated S.B.'s vagina when she was nine or 10 years old based on Baltezor's admission he "pulled" her vaginal lips apart and rubbed her clitoris while "checking" her vagina for abuse and he recalled his fingers " 'just going a little up.' "  Baltezor admits he stated one time he recalled his finger " 'going a little up,' " but he did not think it happened when S.B. was nine years old.  We conclude sufficient evidence supports Baltezor's conviction of count 2.

Section 289 defines "sexual penetration" as "the act of causing the penetration, however slight, of the genital or anal opening of any person" for the purpose of sexual arousal or gratification.  (§ 289, subd. (k)(1).)  Thus, "sexual penetration" does not require penetration of the vagina, but only penetration of the external genital organs, which include the labia majora.  (See *People v. Quintana* (2001) 89 Cal.App.4th 1362, 1371 [evidence that defendant penetrated the victim's labia majora was sufficient to establish sexual penetration within the meaning of section 289].)

Here, Baltezor reported to Detective Verissimo that he would "check" S.B.'s vagina when she came home from his parents' house.  At trial, he testified the "checking" occurred when S.B. was nine or 10 years old.  Baltezor reported to Detective Verissimo that he would physically inspect S.B.'s vagina and pull her vaginal lips apart.  Baltezor denied putting his finger "in there"; rather, he would look and be satisfied nothing happened.  At trial, however, Baltezor testified his hands would be in the middle of S.B.'s

21

thighs when he would "check" her vagina. He denied touching her close to her "crotch" area. Detective Verissimo testified he recalled Baltezor using his hands to make "a motion like he was opening up the opening of her vagina to look inside it" when describing how he would "check" S.B.'s vagina.

We conclude Baltezor's testimony that he pulled S.B.'s vaginal lips apart coupled with Detective Verissimo's testimony Baltezor used his hands in demonstrating how he would open the opening of S.B.'s vagina to look inside was sufficient evidence from which the jury could infer penetration, however slight, of S.B.'s genital organs. Though Baltezor denied such conduct at trial, the jury could have reasonably credited his statement during his interview with Detective Verissimo in finding him guilty of count 2. And " '[w]e do not reweigh evidence or reevaluate a witness's credibility.' " (*People v. Brown* (2014) 59 Cal.4th 86, 106.) Accordingly, sufficient evidence supports this conviction.

### (2)      Count 9:  Penis to Vagina (§ 288, subd. (a)(1))

Baltezor asserts count 9, which was based on an allegation he touched his penis to S.B.'s vagina in violation of section 288, subdivision (a)(1), was not supported by substantial evidence. He notes S.B. testified the alleged incident could have been a dream or nightmare and he denied the alleged incident occurred. He further contends there was no evidence the alleged incident occurred when S.B. was under the age of 14. The People respond though there was substantial evidence Baltezor touched S.B.'s vagina with his penis when she was 15 or younger, "no evidence established that this incident occurred when S.B. was younger than 14, as required by section 288, subdivision (a)." Accordingly, this count should be reversed. We agree the evidence did not establish S.B. was under the age of 14 when the alleged incident during which Baltezor touched his penis to her vagina occurred. Accordingly, we agree with Baltezor, accept the People's concession, and reverse Baltezor's conviction as to count 9.

22

### (3) Counts 12 - 14: Buttocks Touching When S.B. Was Under 14 Years Old

Baltezor next asserts insufficient evidence established the age element of count 12, which relates to him touching S.B.'s buttocks for the first time in violation of section 288, subdivision (a). He concedes both he and S.B. described an incident during which he inserted his finger in S.B.'s buttocks, but he argues S.B. did not specify how old she was when this occurred and Baltezor estimated S.B. was between 12 and 14 years old at the time which was insufficient to establish S.B. was under the age of 14 at the time of the incident. Baltezor further contends the evidence was insufficient to establish two additional counts of lewd touching based on Baltezor touching S.B.'s buttocks when she was under the age of 14. The People respond Baltezor's admission that the "general abuse" that occurred when S.B. was between nine and 14 years old involved him " 'carress[ing] her butt and rub—rub[bing] on her bare butt' " paired with S.B.'s testimony that the abuse began when she was nine years old and would always begin with Baltezor massaging her " 'legs all the way up until he got to [her] vagina' " was sufficient evidence from which the jury could convict Baltezor of counts 12, 13, and 14 related to the alleged buttocks touching. We conclude sufficient evidence supports these convictions.

Here, S.B. testified about an incident during which Baltezor put his finger in her buttocks.[2] In his interview with Detective Verissimo, Baltezor also testified regarding a specific incident that occurred while they were on vacation when he "was rubbing [S.B.'s] rear" and then he "put [his] finger on – in" her buttocks. Baltezor stated S.B. was "12 or 13—14—13 maybe" during the incident. The following separate exchange took place during Detective Verissimo's interview with Baltezor:

---

[2] S.B. further stated Baltezor did not touch her butt any other way, it was just that one incident.

23

VERISSIMO:  …. do you remember rubbing her butt any?

BALTEZOR:  Rubbing her butt?

VERISSIMO:  Yeah.

BALTEZOR:  Well, I've rubbed her butt, yeah.

VERISSIMO:  Okay.  Was that a pretty typical thing?

BALTEZOR:  No, not typical, I don't think.

VERISSIMO:  Get – let me – let me tell you what kind of what – what she had to say about this and you tell me what – if I'm wrong or – or fix something.  She said that, you know, again, we're talking lots of times that this happened over the – over the course of the years.  Um, but a typical time whether it would be from 9 to around 14 is when she said that this ended, um, it would be you touching her vagina skin to skin with your fingers.  But, again, she said the – the penetration part did not happen, uh, very often at all.  It was just the – the outside, rubbing on the top.  Correct?  Just kind of, um, but that you would caress her butt and rub – rub on her bare butt.

BALTEZOR:  Yes, sir.

Considering the record as a whole, Baltezor's statements to Detective Verissimo provided substantial evidence S.B. was under the age of 14 when Baltezor inserted his finger into her buttocks and rubbed it.  While Baltezor's response was initially equivocal as to when the incident when he inserted his finger in S.B.'s buttocks occurred, the jury could have concluded from his response that his final answer was that S.B. was 13 years old when the incident happened.  Additionally, Baltezor unequivocally admitted he rubbed S.B.'s buttocks before he inserted his finger and separately again admitted to Detective Verissimo that he had rubbed S.B.'s buttocks.  When Detective Verissimo expressly asked Baltezor whether he agreed a typical incident of touching when S.B. was between the ages of nine and 14 involved him touching S.B.'s vagina skin to skin and caressing her buttocks, Baltezor agreed.  Viewing such evidence in the light most

24

favorable to the judgment, as we must, we conclude a reasonable jury could have inferred from Baltezor's statements that he inserted his finger in S.B.'s buttocks and also touched it more than once when S.B. was under the age of 14. Accordingly, we conclude substantial evidence supports counts 12, 13, and 14. (See *People v. Westerfield* (2019) 6 Cal.5th 632, 713 [" 'We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.' "].)

### (4) Counts 15 - 17: Breast Touching When S.B. Was Under 14 Years Old

Baltezor next challenges his convictions of counts 15, 16, and 17, which were based on allegations Baltezor touched S.B.'s breasts when she was under the age of 14. He argues S.B. estimated he touched her breasts 20 times when she was in the seventh or eighth grade and, though he too admitted to touching her breasts when she was older, he did not say when the touching occurred. Baltezor contends "[b]ecause [S.B.] turned 14 midway through the 8th grade, the time frame she gave included the latter half of the 8th grade when she was 14. Thus, her testimony did not establish that these offenses occurred before she turned 14." The People contend the evidence was sufficient to permit an inference Baltezor touched S.B.'s breasts three times before she turned 14. We agree with the People.

The California Supreme Court has held generic testimony regarding molestations may be sufficiently substantial from an evidentiary standpoint to support a conviction. (See *People v. Jones* (1990) 51 Cal.3d 294, 314.) "[E]ven generic testimony (e.g., an act of intercourse 'once a month for three years') outlines a series of *specific*, albeit undifferentiated, incidents, *each* of which amounts to a separate offense, and *each* of which could support a separate criminal sanction." (*Ibid*.) And "the particular details

surrounding a child molestation charge are not elements of the offense and are unnecessary to sustain a conviction. (*Id.* at p. 315.) "The victim … must describe *the kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy). Moreover, the victim must describe the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping'). Finally, the victim must be able to describe *the general time period* in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us'), to assure the acts were committed within the applicable limitation period. Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction." (*Id.* at p. 316.)

And here, S.B. testified Baltezor touched her vagina or breasts over 50 times when she was between the fourth and ninth grade. She testified the touching occurred "at least once a week" and increased when she started to develop breasts in the sixth or seventh grade. She estimated Baltezor touched her breasts 20 times with his hands when she was in the seventh or eighth grade. The touching would happen more often some weeks than others. She recalled a specific incident when she was in the seventh or eighth grade when Baltezor told her she could only go to her friend's house if she lifted her shirt and showed him her breasts. During that incident, Baltezor touched her bare breasts. In his interview with Detective Verissimo, Baltezor also recalled telling S.B. she could go to her friend's house if she lifted her shirt, and he stated the incident occurred when S.B. was 12 or 13 years old. He specifically recalled rubbing and touching her breasts as she got older.

26

We conclude such evidence was sufficient to permit a rational trier of fact to conclude Baltezor touched S.B.'s breasts three times when she was under the age of 14. S.B. testified the vaginal or breast touching occurred "at least once a week" and increased when her breasts began to develop more in the sixth or seventh grade. She specified Baltezor touched her breasts approximately 20 times when she was in the seventh or eighth grade. Such testimony regarding the number of times Baltezor touched S.B.'s breasts paired with her testimony regarding the frequency with which he touched her was sufficient evidence from which a rational trier of fact could conclude beyond a reasonable doubt that Baltezor touched S.B.'s breasts at least three times before S.B. turned 14 in the middle of her eighth-grade year. Accordingly, we conclude sufficient evidence supports Baltezor's convictions of counts 15, 16, and 17.

### (5) Counts 19 - 21: Lewd Acts Upon a Child, Leg-touching

Baltezor next argues his convictions for committing lewd acts upon S.B. by touching her legs when she was under the age of 14 were not supported by substantial evidence. Relying on *People v. Jimenez* (2002) 99 Cal.App.4th 450, Baltezor argues his motion to acquit should have been granted on these counts because the alleged leg-touching was " 'en route' " touching that could not support a separate conviction. He asserts there was no evidence of leg-touching that did not lead to vaginal touching and the leg-touching was "a prelude to vaginal touching." He further contends there was insufficient evidence he intended to obtain present and immediate gratification from touching S.B.'s legs. The People respond the touching of S.B.'s legs and vagina that occurred in a single incident would constitute separate acts of fondling but, irrespective, there was evidence of between 50 to 100 incidents which could support each independent count. They further assert Baltezor's admission he would masturbate after abusing S.B. was sufficient to establish the requisite sexual intent.

27

In reviewing the trial court's denial of a motion to acquit, our review is limited to the prosecution's evidence as it stood when the motion was made, which we must view in the light most favorable to the judgment, and from which we must draw all reasonable inferences in support of the judgment. (*People v. Veamatahau* (2020) 9 Cal.5th 16, 35; *People v. Houston* (2012) 54 Cal.4th 1186, 1215.) Section 288, subdivision (a) makes it a felony to commit lewd or lascivious acts on the body of a child under the age of 14 "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." Generally, a statutory violation occurs when the defendant "touches" a child under the age of 14 with the requisite specific intent. (*People v. Scott* (1994) 9 Cal.4th 331, 342-343.) "Assuming other elements of the offense are present, a statutory violation is generally complete as soon as the requisite … 'touching,' or contact occurs." (*Id.* at p. 341) " ' The Legislature, by devising a distinctly harsh sentencing scheme, has emphasized the seriousness with which society views each separate unconsented sexual act, even when all are committed on a single occasion.' " (*Ibid.*) "Each individual act that meets the requirements of section 288 can result in a 'new and separate' statutory violation." (*Id.* at pp. 346-347.) A more lenient rule of conviction should not apply simply because more than one lewd act occurs on a single occasion. (*Id.* at p. 347.) Because intent for purposes of section 288 can seldom be proven by direct evidence, it may be inferred from the circumstances. (*People v. Mullens* (2004) 119 Cal.App.4th 648, 662.)

In *People v. Jimenez*, the defendant was charged with multiple counts of lewd and lascivious acts on a child under the age of 14 years arising from a single incident during which he fondled several areas of the victim's body. (*Jimenez, supra*, 99 Cal.App.4th at pp. 452-453.) Our sister court held that the defendant was properly convicted of multiple counts of lewd and lascivious acts on a child under the age of 14, in violation of section 288, notwithstanding that the acts arose from a single incident. (*Id.* at pp. 456-457.) The

28

*Jimenez* court held "[w]here a defendant fondles a portion of the victim's body with the requisite intent, a violation of section 288 has occurred. The offense ends when the defendant ceases to fondle that area. Where a defendant fondles one area of the victim's body and then moves on to fondle a different area, one offense has ceased and another has begun. There is no requirement that the two be separated by a hiatus, or period of reflection." (*Jimenez, supra,* at p. 456.) The court concluded substantial evidence established a separate fondling of each indicated body part and not merely a touching en route to another area. (*Ibid.*) Thus, the convictions were supported by substantial evidence. (*Id.* at pp. 456-457.)

Viewing the prosecution's evidence in the light most favorable to the judgment, we conclude the evidence was sufficient to establish Baltezor fondled one area of S.B.'s body—that is he massaged her legs including her thighs—before moving on to fondle a different area—her vagina. Contrary to Baltezor's contentions we cannot conclude the evidence established the leg-touching was nonsexual touching merely aimed at touching S.B.'s vagina. S.B.'s testimony established Baltezor did not simply slide his hand up her legs such that the touching was incidental to him getting to her vagina; rather, he massaged S.B.'s feet and legs and worked his way up before then touching or rubbing her vagina. Such evidence was sufficient for a rational trier of fact to conclude the leg massaging constituted a separate act of fondling.

To determine whether a touching was committed for the purpose of sexual arousal, relevant circumstances include the manner of touching and other lewd acts committed by the defendant. (*People v. Martinez* (1995) 11 Cal.4th 434, 445.) Here, S.B. testified Baltezor massaged her feet and legs all the way up before rubbing her vagina. She explained this happened more than five times and this was how the touching would start. Viewing such evidence in the light most favorable to the judgment, we conclude the jury could infer the requisite intent from the manner of touching—massaging— the other lewd

acts committed by Baltezor against S.B., and the circumstances—the leg touching was immediately followed by vaginal touching. Thus, we conclude there was sufficient evidence from the circumstances from which the jury could infer that Baltezor acted with the requisite sexual intent.

### (6) Count 22: Lewd Act Upon a Child, Alleged Shirt-lifting

Similarly, Baltezor contends count 22, which charged lewd conduct upon a child under the age of 14 based on S.B. lifting her shirt to expose her breasts, was not supported by sufficient evidence to establish the incident constituted a separate instance of fondling. Rather, he contends the exposure was done to facilitate breast fondling and thus, constituted mere touching " 'en route' " to another area. The People contend count 22 was supported by evidence of two different incidents during which Baltezor had S.B. lift her shirt to expose her breasts. During the first incident, Baltezor told S.B. he would give her permission to go to her friend's house if she showed him her breasts and allowed him to touch them. The People contend these were "separate demands" for S.B. to remove her clothes to expose her breasts and, next, to allow him to touch them. The People further note there was evidence of another incident when Baltezor directed S.B. to lift her shirt in exchange for Starbucks; there was no evidence Baltezor physically touched S.B.'s breasts during that incident. Baltezor responds the "Starbucks" incident was alleged to have occurred when S.B. was 14 years old and thus, could not support Baltezor's conviction for count 22. The parties agree that directing a child to remove her clothing can constitute "constructive touching" in violation of section 288. We conclude sufficient evidence supports this conviction.

Here, S.B. testified, "[t]here was this one time I really wanted to go to my friend's house and [Baltezor] was, like, 'You can't go unless you show me your boobs and let me touch them for a certain amount of time.' " S.B. lifted up her shirt and then Baltezor touched her bare breasts. As the *Jimenez* court noted: "There is no requirement that the two

30

[lewd acts] be separated by a hiatus, or period of reflection." (*Jimenez*, *supra*, 99 Cal.App.4th at p. 456; accord, *id.* at p. 457 ["There is no requirement that there be a delay between the completion of one act and the commencement of another."].) And here, the cited testimony was sufficient to allow a reasonable jury to find that defendant completed one lewd act—making S.B. expose her breasts—before he began another, separate lewd act—touching her breasts. Thus, we conclude sufficient evidence supports Baltezor's conviction of count 22.

### (7) Count 25: Violation of Section 288, Subd. (c)(1)

Finally, Baltezor argues insufficient evidence supports his conviction of count 25 based on his alleged touching of S.B.'s vagina with his hand when she was 14 years old. Baltezor contends there was no specific evidence to support the allegation he touched S.B.'s vagina when she was 14 years old. The People respond S.B.'s testimony Baltezor abused her between 50 and 100 times when she was between nine and 14 years old paired with her testimony the touching always began with Baltezor rubbing her legs and moving up to her vagina was sufficient to sustain Baltezor's conviction of count 25. We conclude sufficient evidence supports this conviction.

Here, S.B. testified that Baltezor molested her over 50 times beginning when she was in the fourth grade until she was in the ninth grade. When asked whether Baltezor would touch her vagina with his hand during each of the 50 or more incidents she described, S.B. responded, "Pretty much or … he would touch my boobs." She testified the touching occurred "at least once a week" and became more frequent as her body started developing. S.B. explained Baltezor touched her vagina more than 10 times over all of the years. Additionally, Baltezor agreed with Detective Verissimo's description that "a typical time whether it would be from 9 to around 14 is when … [Baltezor] would be … touching [S.B.'s] vagina skin to skin with [his] fingers.… It was just … the

31

outside, rubbing on the top … but that [Baltezor] would caress [S.B.'s] butt and … rub on her bare butt."

As discussed, in cases charging multiple acts of child molestation over a period of time, generic testimony may be adequate to sustain a conviction. (*Jones, supra,* 51 Cal.3d at p. 314.) And here, the cited evidence was sufficiently specific to establish the types of acts committed (vaginal and breast touching), the frequency with which they occurred (weekly), and the general time frame when they occurred (when S.B. was in the fourth to ninth grade). While it would have been preferable for the prosecutor to clarify when the specific types of conduct occurred (breast touching versus vaginal touching), it was reasonable for the jury to infer from the cited evidence that the record supported one count of vaginal touching when S.B. was 14 years old. Accordingly, we accept Baltezor's challenge to the sufficiency of the evidence of count 9 but otherwise reject his challenges to the sufficiency of the evidence of the remaining counts.

## III. Improper Judicial Comment Summarizing S.B.'s Testimony

Baltezor next contends the court erred in summarizing S.B.'s testimony in front of the jury.

### A. Relevant Factual History

During direct examination of S.B., the prosecutor asked S.B. how old she was when the vaginal touching occurred in the following exchange:

> Q.: And just to clarify in case we didn't back when we were talking about the incident involving the defendant touching your vagina with his hands, how old were you or what age range did that happen?
>
> A.: What did you say?
>
> Q.: How old were you when that happened, or if it happened when you were multiple ages, you can tell us all ages?
>
> A.: I'm so confused.

32

Q.: Sorry. We're talking about – we're going to go back.

THE COURT: I have some testimony about that.

[PROSECUTOR]: Was there?

THE COURT: Well, I have it. She remembers it starting or happening when she was in the 4th grade, and the last time when she was in the 9th grade.

## B.     Standard of Review

" 'A California trial court may comment on the evidence, including the credibility of witnesses, so long as its remarks are accurate, temperate, and "scrupulously fair." [Citation.] Of course, the court may not express its views on the ultimate issue of guilt or innocence or otherwise "usurp the jury's exclusive function as the arbiter of questions of fact and the credibility of witnesses." ' " (*People v. Sanders* (1995) 11 Cal.4th 475, 531 (*Sanders*).) "We 'evaluate the propriety of judicial comment on a case-by-case basis, noting whether the peculiar content and circumstances of the court's remarks deprived the accused of his right to trial by jury.' [Citation.] 'The propriety and prejudicial effect of a particular comment are judged both by its content and by the circumstances in which it was made.' " (*Id.* at pp. 531-532.) "[T]he misconduct of a trial judge which will warrant a reversal of the judgment should be so definite and apparent as to leave little doubt that it has resulted in depriving the accused of a fair and impartial trial." (*People v. Browning* (1933) 132 Cal.App. 136, 153.)

Claims of improper judicial comment generally are not preserved for appellate review unless objections were made at trial. (See *Sanders*, *supra*, 11 Cal.4th at p. 531; see also *People v. Cash* (2002) 28 Cal.4th 703, 730.)

## C.     Analysis

Baltezor argues the court's statement that S.B. testified the vaginal touching occurred for the first time when she was in the fourth grade and occurred the last time when she was in ninth grade answer was inaccurate. Rather, Baltezor asserts S.B.

33

testified " 'molestation' " and " 'touching' " in general occurred during the cited age range, not vaginal touching. Baltezor argues the error was "of critical importance to two counts, namely Count 2 (penetration of child 10 years of age or younger) and Count 25 (lewd touching of child by touching vagina[])" because "[t]he court's inaccurate summary of [S.B.]'s testimony supplied the only basis for the jury to find the *corpus delicti* for both offenses." He acknowledges he failed to object to the court's comment below but argues the issue should still be cognizable on appeal relying on the application of the principle set forth in section 647 of the Code of Civil Procedure that, "[A]ny statement or other action of the court in commenting upon or in *summarizing the evidence*" is "deemed excepted to." Alternatively, Baltezor argues the issue affected his fundamental rights and, thus, no objection was required. The People assert Baltezor waived his claim of error by failing to object below. They assert section 647 has no application in the criminal context and an objection was required.

We agree with the People that "no exception to the general requirement of an objection applies, and the claim as to these instances is therefore forfeited." (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 320.) Irrespective, we find no prejudicial error.

Here, S.B. testified Baltezor molested her between 50 and 100 times beginning when S.B. was in the fourth grade until she was in the ninth grade. When asked whether Baltezor would touch her vagina with his hand during each of the 50 or more incidents she described, S.B. responded, "Pretty much or … he would touch my boobs." As discussed, such testimony was sufficient to establish the corpus delicti of counts 2 and 25 without considering the trial court's statement. And, to the extent the trial court's summary was not entirely accurate in that S.B. did not expressly testify Baltezor touched her vagina when she was in the fourth grade and in the ninth grade, we find no prejudice. As Baltezor notes, he himself admitted he began "checking" S.B.'s vagina when she was

34

in the fourth grade. And S.B. testified the molestation began when she was in the fourth grade and each incident involved Baltezor touching her vagina or her breasts. Such evidence was sufficient on its own to support Baltezor's conviction of this count. Accordingly, we conclude the trial court's alleged misstatement was harmless as to count 2. Furthermore, as discussed, S.B. testified Baltezor touched her breasts or vagina on a weekly basis, increasing over time, beginning when she was in the fourth until she was in the ninth grade. And there was evidence Baltezor himself agreed a typical incident of molest that occurred when S.B. was between the ages of nine to around 14 involved touching her vagina skin-to-skin with his fingers and caressing her buttocks. Based on such independent evidence in support of count 25, we cannot conclude Baltezor was prejudiced by the trial court's alleged misstatement such that the court's comment deprived him of a fair and impartial trial.

We reject Baltezor's contention.

## IV.    CALCRIM No. 207

Baltezor next contends the court prejudicially erred in instructing the jury with CALCRIM No. 207 because it allowed the jury to convict Baltezor of the charged offenses even if the age element had not been proven.

### A.    Relevant Procedural History

The court instructed the jury: "It's alleged that Count 1 and 2 occurred on or about December 31 [S.B.'s birth date,] of '08 through December 30, [the day before S.B.'s birth date,] of 2010. It's alleged that Counts 3 through 24 occurred on or about December 31 [S.B.'s birth date,] of '08 through December 30, [the day before S.B.'s birth date,] of 2013. It's alleged that Count 25 occurred on or about December 31, [S.B.'s birth date,] 2013, through December 30, [the day before S.B.'s birth date,] 2014. The People are not required to prove that the crimes took place exactly on those dates, only that it happened reasonably close to those dates.

35

The court also instructed the jury with CALCRIM Nos. 1110, 1112, and 1128, which informed the jury that in order to convict Baltezor of each of the charged offenses, it had to conclude the victim was the requisite age at the time the charged act occurred (14 or 15 years old for count 25, under 14 years old for counts 3-22, and 10 years old or younger for counts 1 and 2). The court also instructed the jury with CALCRIM No. 3501 regarding unanimity:

> "The defendant is charged with committing oral copulation and sexual penetration against S.B. in Counts 1 and 2 sometime during the period of December 31, 2008 to December 30, 2010.
>
> "The defendant is charged with committing lewd acts against S.B. in Counts 3-22 sometime during the period of December 31, 2008 to December 30, 2013.
>
> "The defendant is charged with committing lewd acts against S.B. in Count 25 sometime during the period of December 31, 2013 to December 30, 2014.
>
> "The People have presented evidence of more than one act to prove that the defendant committed these offenses. You must not find the defendant guilty unless:
>
> "1. You all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed for each offense:
>
> "OR
>
> "2. You all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period and have proved that the defendant committed at least the number of offenses charged."

During closing argument, the prosecutor noted counts 1 and 2 required that Baltezor engaged in an act of oral copulation or sexual penetration with S.B. when S.B. "was ten years of age or younger." The prosecutor further noted to prove counts 3 through 22 the People had to prove "the child is under the age of 14 at the time of the

36

act." With regard to count 25, the prosecutor noted it pertains to a lewd act on a child who was 14 or 15 years old, and she argued this claim related to the alleged molestation that occurred when S.B. was in the ninth grade. In closing, defense counsel repeatedly challenged whether the evidence established the age element of different offenses, noting the prosecution had to prove "beyond a reasonable doubt" that S.B. was the requisite age. In rebuttal, the prosecutor noted the "conflicting statements" in the case, "[a] lot" of which had "to do with … the age." The prosecutor then urged the jury to convict Baltezor of the charged crimes based on the testimony presented.

### B. Standard of Review

Appellate courts apply the de novo standard of review to claims of instructional error. (*People v. Rivera* (2019) 7 Cal.5th 306, 326; *People v. Posey* (2004) 32 Cal.4th 193, 218.) " 'It is fundamental that jurors are presumed to be intelligent and capable of understanding and applying the court's instructions.' [Citation.] When a defendant claims an instruction was subject to erroneous interpretation by the jury, he must demonstrate a reasonable likelihood that the jury misconstrued or misapplied the instruction in the manner asserted. [Citation.] In determining the correctness of jury instructions, we consider the entire charge of the court, in light of the trial record." (*People v. Covarrubias* (2016) 1 Cal.5th 838, 926.)

### C. Analysis

Baltezor asserts the modified version of CALCRIM No. 207 given to the jury "permitted the jury to ignore hard boundary lines established by [S.B.'s] birthday and to convict [Baltezor] if the jury could conclude that S.B. was reasonably close to the requisite age." He asserts the court erred in giving CALCRIM No. 207 because he was not charged with offenses that were committed on or about a "certain date." Baltezor further asserts CALCRIM No. 207 "is an incorrect statement of the law when given in a case where time of the offense is a 'material ingredient' of the offense." The People

respond Baltezor forfeited this claim by failing to object to the instruction below. They further contend CALCRIM No. 207 was a correct statement of the law and the court did not err in giving it. They assert, to the extent CALCRIM No. 207 was ambiguous, "the subsequent instructions cleared up that ambiguity." They also argue "because the other instructions (CALCRIM Nos. 1110, 1112, 1128, and 3501) set forth the precise age requirements for each offense, reversal is not required unless the record affirmatively shows that the jury relied on conduct occurring 'reasonably close' to but outside of the proscribed period," and the record does not support such a conclusion. Though we find no forfeiture, we cannot conclude the court prejudicially erred in instructing the jury with CALCRIM No. 207.

" '[A] party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.' " (*People v. Covarrubias, supra,* 1 Cal. 5th at p. 901.) And Baltezor failed to object to the modified CALCRIM No. 207 instruction below or ask that it be clarified or modified. However, he argues the instruction impacted an element of the charged offenses, and instructions regarding the elements of a crime affect a defendant's substantial rights. (*People v. Hillhouse* (2002) 27 Cal.4th 469, 503.) Accordingly, we review the alleged instructional error to determine whether the giving of the modified version of CALCRIM No. 207 resulted in a miscarriage of justice. (§ 1259; *People v. Rojas* (2015) 237 Cal.App.4th 1298, 1304.)

We conclude Baltezor's claim must be rejected on the merits. Baltezor was charged in count 2 with a violation of section 288.7 that occurred "[o]n or about and between December 31, 2008 and December 30, 2010." An essential element of the offense proscribed by section 288.7 is that the child must have been 10 years of age or younger. (See *People v. Levoy* (1920) 49 Cal.App. 770, 772.) He was charged in counts 3 through 22 with committing a lewd act upon a child under the age of 14 in violation of

section 288, subdivision (a) "[o]n or about and between December 31, 2008 and December 30, 2010" (counts 3-5) and "[o]n or about and between December 31, 2008 and December 30, 2013" (counts 6-22). And he was charged in count 25 with committing a lewd act upon a child who was 14 or 15 years old in violation of section 288, subdivision (c)(1) "[o]n or about and between December 31, 2008 and December 30, 2013."

As given, CALCRIM Nos. 1110, 1112, and 1128 correctly stated the age elements of each of these offenses. The court also instructed with CALCRIM No. 3501 on unanimity which reiterated the age element of each of the charged offenses. Standing alone, CALCRIM No. 207, as modified by the trial court, also correctly stated the general rule that when a crime is alleged to have occurred "on or about" a certain date, it is not necessary for the prosecution to prove the offense was committed on that precise date, but only that it happened reasonably close to that date. (§ 955; *People v. Rojas*, *supra*, 237 Cal.App.4th at p. 1304.) Thus, we are not confronted with a situation in which the jury was given plainly conflicting instructions, one of which was erroneous on its face. (Cf. *People v. Ngo* (2014) 225 Cal.App.4th 126, 153.) And, even if we were to assume without deciding it was error to give the instruction, at most, it raised a potential ambiguity or technical inconsistency. (See generally *People v. Hardy* (1992) 2 Cal.4th 86, 186 [instructions that testimony of one witness was sufficient for proof of any fact and that accomplice testimony required corroboration raised "technical inconsistency"].) However, viewing the charge as a whole, as we must, we cannot conclude there is a reasonable likelihood that the jury misconstrued or misapplied the modified version of CALCRIM No. 207 and convicted Baltezor of offenses based on evidence S.B. was reasonably close as opposed to the requisite age for the charged crimes. Contrary to Baltezor's contentions, nothing about the instruction informed the jury they should ignore or otherwise discount the age element of each offense. Rather, the court's instructions as

39

a whole repeatedly informed the jury that age was an element of each offense and it further directed the jurors to consider the instructions together. We presume the jury followed these instructions. (See *People v. Sanchez* (2001) 26 Cal.4th 834, 852 ["Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions"].) And both the prosecutor and defense counsel emphasized the age elements of the different offenses in their closing arguments.[3] On this record, we cannot conclude Baltezor was prejudiced by the instruction. (See *People v. Seabourn* (1992) 9 Cal.App.4th 187, 194 [error in giving former CALJIC No. 4.71, the predecessor instruction to CALCRIM No. 207, harmless beyond a reasonable doubt where there was no likelihood the instruction confused the jury].) Rather, any alleged error in giving CALCRIM No. 207 was harmless beyond a reasonable doubt.

*People v. Rojas* (2015) 237 Cal.App.4th 1298 (*Rojas*), which Baltezor relies upon, does not persuade us otherwise. In *Rojas*, the defendant was charged in count 1 with oral

---

[3]    Baltezor argues the parties' arguments did not assist with the issue of prejudice because "[d]efense counsel described the age element as requiring a victim 14 years of age or younger … and the prosecutor argued that the age element could be established by showing that the victim was 'approximately' close to the requisite age." We disagree with this characterization of the parties' arguments.

It is true defense counsel asked the jury to find Baltezor "not guilty as to the two counts of mouth to the vagina based on her not being 14 years of age or younger," when in fact these counts required a showing S.B. was under the age of 14. But we cannot conclude this brief misstatement exacerbated any alleged prejudice from CALCRIM No. 207 given that defense counsel had just correctly reemphasized the age element of these counts. Indeed, immediately preceding this comment, defense counsel argued S.B. "herself, is not sure whether she was 13 or whether she was 14, that's not proof beyond a reasonable doubt that she was 13 or any age underneath that." And "[i]t needs to be proved beyond a reasonable doubt that she was under 14 and that has not been done." Additionally, the prosecutor did not argue S.B. had to be "approximately" close to the requisite age as Baltezor contends. Rather, in the cited argument, the prosecutor was discussing the alleged "breast touching" and stated S.B. testified "that happened approximately 20 times and that happened approximately 7th and/or 8th grade." We also cannot conclude such argument contributed to any alleged prejudice from the giving of the modified version of CALCRIM No. 207.

copulation or sexual penetration of a child under the age of 10 on or about August 6, 2011. (*Id*. at p. 1302.) He was charged in count 2 with sexual intercourse or sodomy with a child under the age of 10 years on or about December 1, 2006 through August 5, 2011. (*Ibid*.) The court instructed the jury with a modified version of CALCRIM No. 207 in which it stated the People were not required to prove count 1 took place exactly on the day alleged, but only that it happened reasonably close to that day. (*Id*. at p. 1303.) With regard to counts 2 and 3, the court instructed the jury the People were not required to prove those crimes took place exactly during those time periods, but only that they happened on a date or dates after August 12, 2005. (*Ibid*.) Our court concluded the modified version of CALCRIM No. 207 on count 2 permitted the jury to convict defendant based on conduct that occurred prior to September 20, 2006, the date the law he was charged under—section 288.7—went into effect in violation of state and federal ex post facto clauses. (*Rojas,* at pp. 1306-1307.) The court concluded it was not possible to conclude upon which act defendant's conviction for count 2 was based, and thus reversal was required. (*Id*. at p. 1307.)

Here, the modified instruction did not introduce another "objectively confusing" date without explanation or omit the "reasonably close" language like the instruction at issue in *Rojas*. Rather, when construed together with the trial court's other instructions and the parties' argument, there is no reasonable likelihood the jury understood CALCRIM No. 207 to permit convictions of the charged offenses based on conduct that occurred when S.B. was not the requisite statutory ages.

We reject Baltezor's fourth contention.

## V.     Special Instruction

Baltezor next argues it was prejudicial error for the court to instruct the jury with the prosecution's requested special instruction regarding the meaning of penetration as alleged in counts 1 and 2.

41

## A.    Relevant Procedural History

The court instructed the jury with a special instruction requested by the prosecution regarding the meaning of "penetration":

> "The phrase 'penetration of the genital opening,' as mentioned in the previous instruction engaging in oral copulation or sexual penetration with the child ten years of age or younger, refers to penetration of the labia majora rather than penetration of the vagina."

## B.    Standard of Review and Applicable Law

We independently review whether jury instructions correctly state the law. (*People v. Posey, supra,* 32 Cal.4th at p. 218.)  "Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.' " (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)

Section 288.7, subdivision (b), pursuant to which Baltezor was charged in count 2, provides that "[a]ny person 18 years of age or older who engages in oral copulation or sexual penetration, as defined in Section 289, with a child who is 10 years of age or younger is guilty of a felony…."  Section 289, subdivision (k)(1) defines the phrase " 'sexual penetration' " as:  "the act of causing the penetration, however slight, of the genital or anal opening of any person or causing another person to so penetrate the defendant's or another person's genital or anal opening for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object."

## C.    Analysis

Baltezor contends the special instruction "was imprecise" because "it is possible to penetrate the labia majora without penetrating the 'genital opening.' "  He asserts the instruction accordingly "misstated and thereby eliminated the penetration element of the offense."  He argues the language of the special instruction came from *People v. Quintana* (2001) 89 Cal.App.4th 1362 (*Quintana*) and "was not drafted or approved as a

42

jury instruction." Baltezor contends to be consistent with *Quintana*, the instruction should have stated "penetration of the 'genital opening' means penetration of the labia majora that results in contact with interior genitalia inside the exterior of the labia majora." He argues the special instruction as given permitted the jury to convict him of count 2 based on a slight penetration of the labia majora even if he did not go "through" it to the genital opening. The People argue the instruction correctly stated the law and it was not error to give it. We agree with the People; the instruction correctly stated the law and it was not error to give it.

We disagree with Baltezor's contention that the *Quintana* court held "penetration of the 'genital opening' means penetration of the labia majora that results in contact with interior genitalia inside the exterior of the labia majora." Rather, the court in *Quintana* held "the Penal Code section 289, subdivision (k)(1) definition of 'sexual penetration' as 'penetration, however slight, of the genital … opening[]' refers to penetration of the labia majora, rather than penetration of the vagina." (*Quintana*, *supra*, 89 Cal.App.4th at p. 1364.) In so holding, the *Quintana* court reasoned, in part, "[t]he labia majora were … an 'opening' through which appellant's finger penetrated. The labia majora are part of the female genitalia. [Citations.] Accordingly, the opening through which appellant's finger penetrated was a 'genital' opening." (*Id*. at p. 1367.) We agree with the *Quintana* court's analysis and conclude that the challenged special instruction, which was based on the language in *Quintana*, was a correct statement of the law. Thus, we cannot conclude the court erred in giving it.

We reject Baltezor's contention.

## VI.    CALCRIM No. 302

Baltezor next contends the inclusion of CALCRIM No. 302 allowed the jury to resolve conflicting age estimates by a preponderance of the evidence in violation of his due process rights.

43

## A. Relevant Procedural History

The court instructed the jury:

> "If you determine there's a conflict in the evidence, you must decide what evidence, if any, to believe. Do not simply count the number of witnesses who agree or disagree on a point and accept the testimony of a greater number of witnesses.

> "On the other hand, do not disregard the testimony of any witness without a reason or because of prejudice or a desire to favor one side or the other. What is important is whether the testimony or any other evidence convinces you, not just the number of witnesses who testified about a certain point."

## B. Analysis

Baltezor contends CALCRIM No. 302 misstated the jury's task and reduced the People's burden of proof. He contends the instruction "erroneously states that the existence of conflicting evidence triggers an affirmative duty that requires the jury to decide something." Additionally, he argues CALCRIM No. 302 tells the jury they should resolve conflicting evidence by deciding which side convinces them. He asserts, in that regard, CALCRIM No. 302 is favorable to the prosecution because "it encourages the jury to achieve the certainty necessary to find guilt beyond a reasonable doubt." The People respond CALCRIM No. 302 correctly stated the law and did not reduce or misstate the People's burden of proof. We agree with the People.

As we concluded in *People v. Ibarra* (2007) 156 Cal.App.4th 1174, CALCRIM No. 302 is impartial. (*Ibarra, supra*, at p. 1191.) It requires the jury to " 'decide what evidence, *if any*, to believe' regardless of which side introduces the evidence, but does *not* tell the jury to disregard the prosecution's burden of proof or to decide the case on the basis of disbelief of defense witnesses or presentation of more compelling evidence by the prosecution than by the defense." (*Ibid.*; *see People v. Anderson* (2007) 152 Cal.App.4th 919, 939-940.) Indeed, CALCRIM No. 302 does not tell the jury to

decide the case based on which evidence is more convincing by a preponderance of the evidence.

Baltezor argues the challenges to CALCRIM No. 302 rejected in *People v. Anderson*, *supra*, 152 Cal.App.4th at pp. 939-940 and *People v. Ibarra, supra,* 156 Cal.App.4th at pp. 1190-1191 were different because, here, he argues there was a reasonable likelihood the prosecutor's closing argument caused the jury "to misapply the ambiguities in CALCRIM No. 302 in a way that relieved the state of its burden to prove the age element of charged crimes beyond a reasonable doubt." He argues the prosecutor's argument "urged the jury to apply CALCRIM No. 302 to resolve conflicts relating to the victim's age by accepting the age estimates that [Baltezor] gave in his statement as more believable than the age estimates that [S.B.] gave (which is a preponderance of the evidence standard), and to then treat the conflict as having been resolved." Again, we disagree with Baltezor's contention.

The prosecutor's statement in closing, "If you have one witness that says something and you believe that that witness was telling the truth when they made that statement, that is enough to find someone guilty beyond a reasonable doubt," was a correct statement of the law. (See *People v. Gammage* (1992) 2 Cal.4th 693, 700; *People v. Rincon-Pineda* (1975) 14 Cal.3d 864, 885.) Additionally, defense counsel noted in closing, "you heard this conviction of a sexual assault crime may be placed on the testimony of a complaining witness alone, but nowhere in that jury instruction did you hear any change to the concept of reasonable doubt. [The prosecution] need[s] to supply proof and they need to prove the charge beyond a reasonable doubt." And then, in rebuttal, the prosecutor again noted the testimony of a sexual assault victim can be enough if the jury believes it but noted this "does not change the burden of proof." Rather, if the jury "heard a piece of evidence and you believe that piece of evidence. And that [*sic*] you're confident that that evidence is true and when you apply it to the law

45

you're confident that the defendant is guilty," more evidence is not required. We cannot conclude the prosecutor's referenced statements would lead a reasonable jury to misapply CALCRIM No. 302. We also disagree that they encouraged the jury to disregard the burden of proof. Rather, as discussed, both the prosecutor and defense counsel emphasized that the prosecution had to prove the charges beyond a reasonable doubt.

And we do not view CALCRIM No. 302 in isolation. Rather, "[i]n assessing a claim of instructional error or ambiguity, we consider the instructions as a whole to determine whether there is a reasonable likelihood the jury was misled." (*People v. Tate* (2010) 49 Cal.4th 635, 696.) " ' " '[W]e must assume that jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given.' " ' " (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 475.) Here, the jury was repeatedly instructed the prosecution bore the burden of proving guilt beyond a reasonable doubt. We presume the jury understood and followed the instructions.

On this record, we cannot conclude the trial court prejudicially erred in instructing the jury with CALCRIM No. 302.

## VII. Court Did Not Err in Failing to Sua Sponte Instruct on Sexual Penetration as a Lesser Included Offense of Count 2

Baltezor next asserts the court erred in failing to instruct sua sponte that sexual penetration of a minor under the age of 18 (§ 289, subd. (h)) was a lesser included offense of count 2.

### A. Relevant Procedural History

The court instructed the jury with certain lesser included offenses:

"The defendant is charged with lesser included offenses of battery, and that's in Counts 2 through 25. To prove the defendant is guilty of battery, the People must prove that the defendant willfully touched [S.B.] in a harmful or an offensive manner…. The slightest touching can be enough to commit battery if it's done in a rude or angry way. The touching does not have to cause pain or injury of any kind. Making contact with

46

another person, including through his or her clothing, is enough. The touching can be done directly or indirectly by causing an object to touch the person."

"Simple assault, which is also a lesser included offense of Counts 2 through 25. In order to prove the defendant guilty of this crime the People must prove that, one, the defendant did an act that by its nature would directly and probably result in the application of force to a person. The defendant did the act willfully. When the defendant acted he was aware of facts that would lead a reasonable person to realize that this act by its nature would directly and probably result in the 'application of force' to someone, and when the defendant acted he had the present ability to 'applied [*sic*] force' to someone."

### B. Standard of Review

"California decisions have held for decades that even absent a request, and even over the parties' objections, the trial court must instruct on a lesser offense necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser." (*People v. Birks* (1998) 19 Cal.4th 108, 118; see *People v. Breverman* (1998) 19 Cal.4th 142, 154, 162.) The duty extends to every lesser included offense supported by substantial evidence; it is not satisfied "when the court instructs [solely] on the theory of that offense most consistent with the evidence and the line of defense pursued at trial." (*People v. Breverman, supra,* 19 Cal.4th at p. 153.) "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury." (*Breverman, supra,* 19 Cal.4th at p. 162.) " 'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could ... conclude[]" ' that the lesser offense, but not the greater, was committed." (*Ibid.*) "We independently review a trial court's failure to instruct on a lesser included offense." (*People v. Cook* (2006) 39 Cal.4th 566, 596.)

47

" 'To determine if an offense is lesser and necessarily included in another offense for this purpose, we apply either the elements test or the accusatory pleading test. "Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former." ' " (*People v. Lopez* (2020) 9 Cal.5th 254, 269-270.)

The "duty to instruct fully on all lesser included offenses suggested by the evidence arises from California law alone," (*Breverman*, *supra*, 19 Cal.4th at p. 149) and thus a trial court's error in fulfilling this duty "must ... be evaluated under the generally applicable California test for harmless error ... set forth in [*People v.*]*Watson* [(1956) 46 Cal.2d 818, 836]." (*Breverman*, *supra*, at p. 176.) Under *Watson, supra*, 46 Cal.2d 818 (*Watson*), reversal is not warranted unless "it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred." (*Breverman, supra,* at p. 178; *Watson*, *supra*, at p. 836.)

## C.    Analysis

Baltezor argues, here, sexual penetration of a child in violation of section 289 was a lesser included offense of sexual penetration of a child 10 years of age or younger in violation of section 288.7, subdivision (b) based on the accusatory pleading test. He further contends the evidence supported the giving of an instruction on this offense because it showed penetration occurred but the age element of the offense was in doubt, so there was a " 'reasonable chance' " the jury would have opted to convict Baltezor of sexual penetration of a child in violation of section 289 instead of sexual penetration of a child 10 years of age or younger in violation of section 288.7, subdivision (b). The People respond Baltezor does not cite to an accusatory pleading that alleges count 2 was limited to "sexual penetration" as opposed to oral copulation; so, there was no need to

48

instruct on section 289, subdivision (h) because it is not a lesser included offense of a violation of section 288, subdivision (b).

Section 288.7, subdivision (b) makes it illegal to "engage[ ] in oral copulation or sexual penetration ... with a child who is 10 years of age or younger." And section 289, subdivision (h) penalizes "any person who participates in an act of sexual penetration with another person who is under 18 years of age."

In this case, contrary to the People's assertion, the information alleged Baltezor unlawfully engaged in sexual penetration with a child age 10 or younger. And we agree with Baltezor that penetration of a child under section 289 is a lesser included offense of section 288.7, where, as here, the count is based on penetration as opposed to copulation under the accusatory pleading test. Put differently, the facts actually alleged in the accusatory pleading included all of the elements of a violation of section 289, with the added element that the child was under the age of 10.

However, even if we were to assume, arguendo, the court erred in failing to instruct the jury on sexual penetration in violation of section 289, we cannot conclude Baltezor was prejudiced. In convicting Baltezor of count 2, the jury necessarily found true that Baltezor penetrated S.B.'s vagina during the "checking" incidents that occurred when she was under the age of 11 and rejected the defense theory he did not "penetrate" her vagina during these incidents. The prosecutor argued to the jury that count 2 was based on the "checking" incidents when Baltezor would inspect S.B.'s vagina. Indeed, the prosecutor expressly clarified in closing "[w]e're not talking about the incident described when [S.B.] was 11 or 12," rather "the checking incident, the incident where he's pulling her vagina lips apart" was evidence of the penetration alleged in count 2 And, as discussed, Baltezor testified the "checking" occurred when S.B. was nine or 10 years old. He reported to Detective Verissimo that he would physically inspect S.B.'s vagina and pull her vaginal lips apart. Detective Verissimo testified he recalled Baltezor

49

using his hands to make "a motion like he was opening up the opening of her vagina to look inside it" when describing how he would "check" S.B.'s vagina. And the jury was further instructed with CALCRIM No. 1128, which expressly directed them the People had to prove S.B. was 10 years of age or younger when Baltezor engaged in sexual penetration. On this record, we cannot conclude it is reasonably probable that a more favorable verdict would have been returned if the court had instructed the jury on sexual penetration as defined in section 289.[4] (See *People v. Beames* (2007) 40 Cal.4th 907, 928 [" ' "[e]rror in failing to instruct the jury on a lesser included offense is harmless when the jury necessarily decides the factual questions posed by the omitted instructions adversely to defendant under other properly given instructions" ' "].)

---

[4] We further note the jury could have convicted Baltezor of the lesser included offenses of battery or assault, on which it was instructed, which have no age element. It did not.

Baltezor relies upon *People v. Ngo* (2014) 225 Cal.App.4th 126 (*Ngo*) in arguing the jurors were faced with an " ' "all or nothing" ' " choice in being forced to decide between the charged offense and simple battery with no middle-road option. In that case, the court found the trial court had a sua sponte duty to instruct the jury on attempted sexual penetration with a child, as a lesser included offense. (*Id.* at pp. 155-157.) In her initial statements to the police, the victim stated that the defendant touched her, but she was equivocal as to whether he actually penetrated her. (*Id.* at p. 157.) The victim's mother testified she interrupted the defendant's touching of the victim when she walked into the living room, but she did not see whether he penetrated the victim. (*Ibid.*) The defendant admitted touching the victim but denied that he penetrated her. (*Ibid.*) The court found the failure to instruct on attempted penetration prejudicial because "[i]t is reasonably probable the jury concluded defendant touched the victim's genital area in some manner, and that they opted for the more serious offense of sexual penetration because the only other options were … simple battery conviction or outright acquittal." (*Id.* at p. 161.)

Here, unlike in *Ngo*, Baltezor did not deny penetrating S.B.'s vagina. Rather, he argues there was a reasonable probability the jury would have concluded he penetrated S.B.'s vagina but not when she was under the age of 11. We disagree. As discussed, based on the given instructions, parties' arguments, and the jury's conclusions, we cannot conclude a different verdict was reasonably probable even if an instruction on a violation of section 289 had been given. Thus, *Ngo* is distinguishable.

50

Accordingly, we reject Baltezor's contention.

## VIII. Alleged Error in Failing to Apply Section 654 to Stay Certain Counts

Baltezor next argues the court erred in failing to stay his sentences on certain counts which were "duplicative."

### A. Standard of Review and Applicable Law

"An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).)

"A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence." (*People v. Brents* (2012) 53 Cal.4th 599, 618.) " 'The trial court has broad latitude in determining whether section 654, subdivision (a) applies in a given case.' " (*People v. Vasquez* (2020) 44 Cal.App.5th 732, 737 (*Vasquez*); *People v. Garcia* (2008) 167 Cal.App.4th 1550, 1564.) Under this standard, this court must view the evidence in the light most favorable to the trial court's finding and presume the existence of every fact the trial court could reasonably deduce from the record. (*Vasquez*, *supra*, 44 Cal.App.5th at p. 737; *People v. DeVaughn* (2014) 227 Cal.App.4th 1092, 1113.)

### B. Analysis

Baltezor next argues the court erred in failing to stay certain sentences pursuant to section 654. He argues because counts 10 and 11 were based on the same lewd act (Baltezor placing his face in S.B.'s genitals), only one punishment was authorized. Similarly, he contends counts 19 through 22 were based on "leg-massaging used as a means of working his way to the vagina," so, those sentences should have "been stayed as duplicative of the punishment imposed for vaginal touching." He further asserts counts 12 and 14 involved "butt-rubbing" that was done "in conjunction with and

incidental to vaginal rubbing" and those sentences were also duplicative of the punishment imposed for vaginal touching. We disagree with Baltezor's contentions and address and reject each in turn.

### (1)    Counts 10 - 11

Baltezor first argues he was charged in count 10 with contacting S.B.'s genitals with his nose and in count 11 with contacting S.B.'s genitals with his mouth, both in violation of section 288, subdivision (a). He argues both counts were based on an incident when his nose and mouth made "simultaneous contact" with S.B.'s genitals and Baltezor's "nose made incidental genital contact during [the] kiss." He asserts only one punishment for the two counts was warranted, so the punishment on one count should be stayed.[5] The People respond none of the challenged convictions were based on a single act that was charged under multiple code sections. With regard to counts 10 and 11, they assert substantial evidence established each count was based on "entirely separate acts." We agree with the People.

In *Harrison, supra,* 48 Cal.3d 321, the California Supreme Court reiterated that "section 654 does *not* bar multiple punishment simply because numerous sex offenses are rapidly committed against a victim with the 'sole' aim of achieving sexual gratification." (*Id.* at pp. 324-325.) The *Harrison* court noted section 654 "itself literally applies only

---

[5]    Baltezor also contends before the California Supreme Court's decision in *People v. Correa* (2012) 54 Cal.4th 331 (*Correa*), the law used to provide that section 654 precluded multiple punishment for more than one violation of a single Penal Code section, and this interpretation should apply to counts 10 and 11, which could have occurred before *Correa* issued. The People respond Baltezor's ex post facto argument rooted in *Correa* is inapposite because that case pertained to multiple acts that occur simultaneously, i.e. possession of multiple firearms at one time. Because we conclude the discussion of the application of section 654 in *People v. Harrison* (1989) 48 Cal.3d 321 (*Harrison*), which was decided before *Correa* and before the charges in this case are alleged to have occurred, is more applicable to the facts of this case, we do not address Baltezor's argument further.

52

where such punishment arises out of multiple statutory violations produced by the 'same act or omission.' " (*Id.* at p. 335.)

Here, there was substantial evidence from which the court could have concluded counts 10 and 11 arose out of separate acts—namely, Baltezor touching his nose to S.B.'s vagina while "smelling" it and his mouth touching her vagina when he kissed it. S.B. testified regarding an incident when she was 13 or 14 years old during which Baltezor told her he wanted to smell her vagina. Baltezor put his head down and then put his mouth on S.B.'s vagina; she did not have any clothes on. Baltezor too reported to Detective Verissimo an incident when S.B. was 12 or 13 during which he smelled S.B.'s vagina and his nose touched "her clitoris." He told Detective Verissimo he kissed S.B.'s vagina on a separate occasion when S.B. was "ten or so." But, at trial, Baltezor testified he kissed S.B.'s vagina when she was 13 or 14 years old. Here, Baltezor's own statements provided evidence the events giving rise to the two accounts occurred on different occasions.

Irrespective, we cannot conclude Baltezor smelling and touching his nose to S.B.'s vagina was "merely incidental to" him kissing it even if the acts took place during the same incident. (See *Harrison*, *supra*, 48 Cal.3d at p. 335 ["If … defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations … were parts of an otherwise indivisible course of conduct"]; see also *People v. Perez* (1979) 23 Cal.3d 545, 551-554 (*Perez*) ["[n]one of the sex offenses was committed as a means of committing any other, none facilitated commission of any other, and none was incidental" to any other; section 654 did not apply].) Rather, the trial court could have reasonably concluded defendant chose to satisfy his sexual urges by committing two different sex acts, and "[a] defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on

53

his victim is substantially more culpable than a defendant who commits only one such act." (*Perez*, *supra*, 23 Cal.3d at p. 553.) Accordingly, section 654 did not preclude separate punishments for counts 10 and 11.

### (2) Counts 19 - 21

Baltezor next argues the sentences on counts 19 through 21, which related to leg-touching in violation of section 288, subdivision (a), should have been stayed because these counts were duplicative of the vaginal touching accounts alleged as counts 3 through 8. He asserts the leg-touching was either incidental to or a means to facilitate vaginal touching. The People respond S.B. reported 50 to 100 incidents of molestation and, thus, substantial evidence established Baltezor touched her legs at least three times in acts that were not related to the acts giving rise to the vaginal touching convictions.

Again, we conclude there was sufficient evidence the leg-touching and vaginal-touching constituted separate acts that were not "merely incidental" to one another and neither act was necessary to accomplish the other. Rather, as previously discussed, there was sufficient evidence from which a fact-finder could conclude defendant's touching of S.B.'s legs, including her thighs amounted to a separate fondling of one area of the victim's body before moving on to fondling a different area of her body—her vagina. The fact-finder could also infer the requisite intent from the manner of leg-touching— massaging— the other lewd acts committed by Baltezor against S.B., and the circumstances—the leg-touching was immediately followed by vaginal touching. (See *People v. Martinez*, *supra*, 11 Cal.4th at p. 445.) And, as the *Harrison* court held, "section 654 does *not* bar multiple punishment simply because numerous sex offenses are rapidly committed against a victim with the 'sole' aim of achieving sexual gratification." (*Harrison, supra,* 48 Cal.3d at p. 325.) Rather, because there was substantial evidence the leg-touching and vaginal-touching were separate sexual acts, section 654 did not bar separate punishments for these counts. (See *People v. Scott*, *supra*, 9 Cal.4th at p. 344,

fn. 6 ["multiple sex acts committed on a single occasion can result in multiple statutory violations. Such offenses are generally 'divisible' from one another under section 654, and separate punishment is usually allowed"]; see also *People v. Alvarez* (2009) 178 Cal.App.4th 999, 1006-1007 [court could have reasonably rejected defendant's contention kissing was designed to facilitate subsequent acts of penetration and fondling and instead concluded defendant kissed victim "for the purpose of his own arousal" and not to facilitate other form of sexual contact "although that is where things ultimately led"; "Each lewd act was separate and distinct, and none of the acts were necessary to accomplish the others"].)

Furthermore, S.B. testified Baltezor touched her legs more than five times. He would "massage [her] legs all the way up until he got to [her] vagina, and then he would just do his thing." He touched her legs almost as much as he touched her vagina with his hand. And he touched her vagina more than 10 times over the years. Thus, we also agree with the People there was sufficient evidence of separate incidents to support the vaginal touching counts and the leg-touching counts.

### (3)    Counts 13 - 14

Finally, Baltezor argues counts 13 and 14, which were each based on allegations he touched S.B.'s buttocks, were "closely associated with vaginal touching" in that it "occurred in conjunction with vaginal rubbing [and the evidence] was too nondescript to say that it was separate and distinct from vaginal rubbing."

Again, we conclude there was substantial evidence from which the court could have concluded the buttocks-touching constituted separate and distinct acts or arose from separate instances than the charged vaginal touching incidents such that counts 13 and 14 merited separate punishments. Baltezor admitted to Detective Verissimo that he had rubbed S.B.'s buttocks, and he agreed with Detective Verissimo's statement that a typical incident involved Baltezor touching S.B.'s vagina with his hands and Baltezor caressing

55

and rubbing S.B.'s bare buttocks.  The court could have reasonably concluded Baltezor's acts of rubbing and caressing S.B.'s buttocks were divisible from the vaginal touching, rather than incidental to or a means of committing or facilitating the commission of the vaginal touching.  (See *People v. Bright* (1991) 227 Cal.App.3d 105, 110 [section 654 did not preclude separate sentences on separate counts of lewd and lascivious acts upon a child under the age of 14 years, where none of the lewd acts were necessary for or incidental to any other charged lewd act].)  Furthermore, S.B. testified the vaginal touching occurred more than 10 times.  Thus, there were sufficient independent incidents of vaginal touching to support the related counts without considering the incidents giving rise to the counts for buttocks touching.  Thus, section 654 did not preclude separate sentences for these counts.

## IX.    The Record Supports the Imposition of Consecutive Sentences

Baltezor next argues the record does not sufficiently support the imposition of consecutive sentences.

### A.    Relevant Procedural History

The probation officer recommended consecutive sentences for all offenses because "[Baltezor's] seeming inability to refrain from repetitive sexual abuse of a young child indicates the need to be isolated from society to keep him from committing further crimes of this nature.  Therefore, it will be recommended that each count run consecutively." Factors cited were:  The crimes and their objectives were predominately [*sic*] independent of each other, the crimes involved separate acts of violence or threats of violence, and the crimes were committed at different time or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior.

At sentencing, defense counsel cited Baltezor's "lack of record and positive employment" and urged the court to "give him some realistic shot at parole" by running

56

"approximately half of the counts concurrent instead of consecutive." Counsel also noted how Baltezor went to the police on his own.

Before pronouncing sentence, the court made the following observations:

> "All right. Two factors that were extremely prominent to the Court. [¶] Number one was the fact that these abuses went on for a substantial period of time. If it would have been an isolated incident where something emotionally disturbing or there had been some reason -- I understand a lot of the motivation here is that the wife at the time became very distant and, in fact, left him, cheated on him, so he turned to the victim for comfort, but he knew it was wrong. That he essentially could not prevent himself from engaging in this type of conduct. That went on for a substantial period of time.

> "The other thing that stands out in the Court's mind was [S.B.'s] testimony. Just how distraught she was. I mean, there can be no greater trauma for a child than to have a parent, someone you trust, you confide in, you look for guidance, to violate that trust. And certainly, the tenor of her testimony clearly showed in the Court's mind the betrayal she felt for violating that trust.

> "I agree that [Baltezor] has no record and he came forward at an early stage of the proceedings, the criminal proceedings, not his conduct. It was only after he was accused and confronted that he then said I'll go down to the police department and confess my sins, so to speak, and he did.

> "But the victim was particularly vulnerable. [Baltezor] took advantage of a position of trust. The crimes and their objectives were predominantly independent of each other. Every day, every new day he had a chance to say no or I quit. They were committed at different times."

The court selected the middle term (six years) for the base term (count 3) and imposed consecutive, one-third, midterm sentences of two years on counts 4 through 22 and a consecutive, one-third, midterm sentence of eight months on count 25. On count 2, the court sentenced Baltezor to a term of 15 years to life in prison with no credits to be

57

served consecutively. The court further informed Baltezor of the imposed fines and fees and advised him he was eligible for parole and to appeal before concluding, "That's all." Accordingly, Baltezor received an aggregate determinate term of 44 years, 8 months' imprisonment and an indeterminate term of 15 years to life imprisonment. Counsel thanked the court and the sentencing hearing concluded.

### B.     Standard of Review and Applicable Law

A trial court has broad discretion to decide whether to run prison terms on multiple offenses concurrently or consecutively. (*People v. Clancey* (2013) 56 Cal.4th 562, 579.) The court "shall state the reasons for its sentence choice on the record at the time of sentencing." (§ 1170, subd. (c).) "[I]n the absence of a clear showing that its sentencing decision was arbitrary or irrational, a trial court should be presumed to have acted to achieve legitimate sentencing objectives and, accordingly, its discretionary determination to impose consecutive sentences ought not be set aside on review." (*People v. Giminez* (1975) 14 Cal.3d 68, 72; see also *People v. Dominguez* (1981) 121 Cal.App.3d 481, 508.)

Rule 4.425 of the California Rules of Court lists factors affecting whether concurrent or consecutive sentences should be imposed which include whether or not:

> "(1) The crimes and their objectives were predominantly independent of each other;
>
> "(2) The crimes involved separate acts of violence or threats of violence; or
>
> "(3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior."

"[C]omplaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*People v. Scott*, *supra*, 9 Cal.4th at p. 356.) There is an exception: "Of course,

there must be a meaningful opportunity to object to the kinds of claims otherwise deemed waived by today's decision. This opportunity can occur only if, during the course of the sentencing hearing itself and before objections are made, the parties are clearly apprised of the sentence the court intends to impose and the reasons that support any discretionary choices." (*Ibid*.)

### C.    Analysis

Baltezor contends the court imposed consecutive sentences on every count "without a proper statement of reasons to adequately explain why *each count* received a consecutive sentence." Rather, the court generally explained " '[t]he crimes and their objectives were predominantly independent of each other' " and " 'were committed at different times.' " He argues this explanation was "plainly inapplicable to counts that occurred simultaneously (Counts 10 and 11 [mouth and nose]) and to counts charging offenses that were committed in conjunction with other offenses (Counts 13-14 [touching buttocks while engaged in vaginal touching], Counts 19-21 [touching legs as a prelude to vaginal touching], and Count 22 [lifting shirt to facilitate breast touching].)" He argues "[b]ecause there were multiple circumstances in mitigation, the court's error in failing to state adequate reasons for imposing consecutive sentencing on these counts cannot be found harmless." He asserts he was not offered a meaningful opportunity to object at sentencing so should be permitted to raise this claim for the first time on appeal. The People disagree that the court's statements at sentencing did not apply to each count. They also contend Baltezor mischaracterizes counts 10 and 11, counts 13 and 14, and counts 19 through 21 as occurring "simultaneously" and counts 19 through 21 as a "prelude to vaginal touching." Rather, the People argue "[e]ach conviction referred to an entirely different episode." Irrespective, they argue it was not error for the court to impose consecutive sentences on these counts even if they had occurred simultaneously.

The California Supreme Court has held " '[t]he parties are given an adequate opportunity to seek … clarifications or changes if, at *any time* during the sentencing hearing, the trial court describes the sentence it intends to impose and the reasons for the sentence, and the court thereafter considers the objections of the parties before the actual sentencing.' " (*People v. Boyce* (2014) 59 Cal.4th 672, 731.) Here, the People do not contend Baltezor's claim is forfeited because defense counsel requested the court impose concurrent rather than consecutive sentence and the court pronounced sentence and then immediately terminated the proceedings. We accept the People's concession and proceed to the merits of Baltezor's claim.

We cannot conclude the record clearly establishes the trial court's decision to run the sentences on each count consecutively was arbitrary or irrational. Here, the trial court noted ample reasons to run Baltezor's sentences consecutively. Its comment that the acts occurred over a "substantial period of time" represents an acknowledgment by the court that the crimes did not arise from "a single period of aberrant behavior." And the court recognized, as the probation department did, that Baltezor took advantage of a position of trust and the victim was particularly vulnerable before concluding consecutive punishments were merited. The court further acknowledged and considered the factors in mitigation on the record and, notably, sentenced Baltezor to the middle as opposed to aggravated term on each count. Additionally, we have already concluded there was sufficient evidence to establish the charged acts resulting in convictions (other than count 9) were sufficiently independent so as to permit separate punishments under section 654. And, as we explained in the previous section, there was substantial evidence to establish independent incidents to support counts 10 and 11 (the mouth to and nose vagina counts) and the vaginal touching counts and leg-touching counts. Similarly, there was also sufficient evidence of independent incidents to support the vaginal touching counts and the buttocks touching counts. That is, S.B. testified Baltezor repeatedly touched her

60

vagina, more than 10 times, more times than those charged. On this record, we cannot conclude the court's sentencing decision exceeded the bounds of reason such that a resentencing hearing is required. Rather, we presume it acted to achieve legitimate sentencing objectives in sentencing Baltezor to consecutive terms.

Accordingly, we reject Baltezor's contention.

## X. Ineffective Assistance of Counsel

Baltezor next argues his counsel was ineffective (1) for withdrawing viable defenses and improvidently conceding Baltezor's guilt on several charges, (2) for failing to bring a new trial motion the trial court invited, (3) for failing to object to CALCRIM No. 207, (4) for misstating in summation the age element of section 288, subdivision (a), (5) for failing to assert the bar of section 654 for many counts at sentencing, and (6) for failing to object when the court imposed consecutive sentences on all counts based on reasons that were inapplicable to some counts.

### A. Standard of Review

A defendant claiming ineffective assistance of counsel must satisfy the two-part test of *Strickland v. Washington* requiring a showing of counsel's deficient performance and prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).) As to deficient performance, a defendant "must show that counsel's representation fell below an objective standard of reasonableness" measured against "prevailing professional norms." (*Id.* at p. 688.)

In evaluating trial counsel's actions, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*Strickland*, *supra*, 466 U.S. at p. 689; see *People v. Dennis* (1998) 17 Cal.4th 468, 541.) Thus, a defendant must overcome the presumption that the challenged action might be considered sound trial strategy under the circumstances. (*Strickland*, *supra*, at p. 689;

*People v. Dennis*, *supra*, at p. 541.) "Reasonableness must be assessed through the likely perspective of counsel at the time." (*People v. Ochoa* (1998) 19 Cal.4th 353, 445.)

The prejudice prong requires a defendant to establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland*, *supra*, 466 U.S. at p. 694.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Ibid.*)

## B. Counsel Was Not Ineffective for Pursuing Certain Defenses and Conceding Guilt on Certain Counts

Baltezor first contends his counsel effectively conceded Baltezor's guilt on every count other than counts 1, 2, 9, 10, and 11.

### (1) Relevant Procedural History

During opening, defense counsel advised the jury "I'm not defending an innocent man. I'm defending a man who's guilty of certain things and I don't think he's guilty of others, so I'm going to ask for a verdict of not guilty as to some of the counts at the end of this trial."

In his closing, defense counsel noted it was undisputed "there were numerous incidents of molestation." He emphasized to the jury it had to find proof beyond a reasonable doubt in support of the charges and to look at the actual testimony and ask for a readback of necessary. He specifically challenged the sufficiency of the evidence with regard to counts 1, 2, 9, 10, and 11 and asked the jury to return "not guilty" verdicts on those counts. He argued the evidence was insufficient to establish counts 1 and 2, including the age element of these offenses. He also challenged the evidence in support of the count related to Baltezor penetrating S.B.'s buttocks. He further asserted there was insufficient evidence of penetration during the "checking" incidents. He argued the evidence was insufficient regarding count 9 (penis to vagina) because S.B. testified it could have been a dream. And he challenged the sufficiency of the age element of the nose and mouth to vagina counts (counts 10 and 11).

### (2)    Analysis

Baltezor argues his counsel effectively conceded guilt on numerous charges and the concession was unreasonably overbroad. He asserts his counsel was ineffective in failing to assert viable defenses to the charges including that the evidence failed to establish the age element of numerous offenses, the corpus delicti of various offenses was not established, and that the evidence was insufficient to establish acts supporting separate counts, as opposed to " 'en route' " touching. The People respond the record does not reveal counsel's reason for conceding guilt and, thus, Baltezor's claim is not reviewable on direct appeal. Rather, we presume counsel's performance was reasonable unless no competent counsel would deem the concessions " 'sound trial strategy.' " And, here, counsel could have chosen to concede guilt given the overwhelming evidence including Baltezor's confessions in support of the counts. The People further respond Baltezor cannot show prejudice given the evidence in support of these counts. They further contend "counsel's lack of candor in defending these counts may have rippled throughout other parts of the jury's deliberations … resulting in a more negative outcome."

> "[S]crutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " (*Strickland*, *supra*, 466 U.S. at p. 689.)

63

On direct appeal, when no explanation for counsel's conduct can be found in the record, "we must reject the claim [of ineffective assistance of counsel] unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation." (*People v. Scott* (1997) 15 Cal.4th 1188, 1212; see *People v. Hernandez* (2004) 33 Cal.4th 1040, 1053.)

Here, the decisions Baltezor challenges—his counsel's decision to ask for "not guilty" verdicts only on certain counts and not to argue certain points in closing—were tactical. (See *People v. Freeman* (1994) 8 Cal.4th 450, 498 ["The decision of how to argue to the jury after the presentation of evidence is inherently tactical"].) To prevail, Baltezor must overcome the strong presumption that counsel's actions were sound trial strategy under the circumstances prevailing at trial. (*Strickland, supra,* 466 U.S. at p. 689.) We cannot conclude Baltezor has overcome that presumption.

The record here does not reflect counsel's reasons behind his tactical decision to focus his closing argument on certain counts. And there is a plausible tactical justification for defense counsel's actions. "Recognizing the importance of maintaining credibility before the jury, [the California Supreme Court has] repeatedly rejected claims that counsel was ineffective in conceding various degrees of guilt." (*People v. Freeman, supra,* 8 Cal.4th at p. 498.) "[G]ood trial tactics often demand complete candor with the jury, and ... in light of the weight of the evidence incriminating a defendant, an attorney may be more realistic and effective by avoiding sweeping declarations of his or her client's innocence." (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1060-1061.) Here, Baltezor himself admitted to repeatedly molesting S.B. He discussed specific incidents corroborated by S.B.'s testimony. Reasonably competent counsel could have determined an extended closing argument challenging each and every count, in light of Baltezor's confessions regarding his repeated molestation of S.B. would present the danger of focusing the jury's attention upon the unsavory details of the crimes committed. (See

*People v. Carter* (2005) 36 Cal.4th 1114, 1190.) Likewise, reasonably competent counsel also could have determined in light of Baltezor's admissions coupled with S.B.'s testimony that a guilty verdict as to numerous accounts was a foregone conclusion and the defense could retain some credibility by focusing its defense against certain, more vulnerable counts. (*Ibid*; *People v. Bernal* (2019) 42 Cal.App.5th 1160, 1169 [counsel's effective concession of guilt on some charges during closing argument "appears to have been a calculated strategy to concede the near inevitable outcome on certain charges in order to gain credibility with the jury and pursue acquittal on charges where the evidence was not as strong"].)

To the extent Baltezor contends his counsel was ineffective for failing to argue the corpus delicti of numerous counts (counts 12, 13, 14, 15, 18, 22) was not established or substantial evidence did not support each element of the specific charged crimes, again we find no ineffective assistance. As discussed, "the proof necessary to satisfy a corpus delicti challenge 'need only be a slight or prima facie showing "permitting the reasonable inference that a crime was committed." ' " (*People v. Weaver* (2001) 26 Cal.4th 876, 931.) And we have already concluded there was sufficient evidence to establish the corpus delicti of each count and that each count, with the exception of count 9, was supported by substantial evidence. Additionally, the jury was instructed with CALCRIM No. 359 regarding the corpus delicti rule, that it could not convict Baltezor of a charge based on his out-of-court statements alone, but that it needed other evidence to show the charged crime was committed. They were also instructed regarding the prosecution's burden of proof and the elements of each offense, including the age elements. We presume the jury understood the instructions and applied them properly. (*People v. Holt* (1997) 15 Cal.4th 619, 662.) Accordingly, we cannot conclude Baltezor has established he was prejudiced by his counsel's alleged failure to expressly argue the prosecution did not present sufficient proof of the corpus delicti, age element, or

independent basis for each count. Rather, the record before us does not affirmatively disclose prejudicial ineffective assistance of counsel on this basis.

We reject Baltezor's contention.

### C. Baltezor Has Not Established He Was Prejudiced by Counsel's Failure to File a Motion for New Trial

Baltezor argues there was a reasonable possibility the court would have granted a new trial as to numerous counts if his counsel had filed a new trial motion, but his counsel failed to do so. In support, Baltezor argues, in denying his motion for acquittal on count 9, the court advised counsel it would " 'revisit that on a motion for new trial' " because there was a " 'strong argument' " if the jury convicted Baltezor of that count. Because we are already reversing this count based on the insufficiency of the evidence in support, we need not address defendant's claim as it relates to count 9 further.

However, Baltezor also argues the court's invitation for Baltezor to bring a new trial motion signaled a willingness to consider other counts as well. He argues there was a reasonable chance the court would have granted a new trial on count 2 because it rejected the prosecutor's argument the checking incidents necessarily required slight penetration of the labia majora in rejecting the " 'substantial sexual conduct' " allegations from counts 3 through 5. Baltezor also argues the following counts were vulnerable to challenge such that there was a reasonable chance the court would have granted a new trial on them—"Counts 10 and 11 (sniffing incident), Count 12 (butt penetration incident), Counts 15 through 17 (breast touching), Count 18 (Kama Sutra incident), and Count 22 (shirt lifting incident)" because the age element was not sufficiently established. He also contends the court also may have granted a new trial as to "Counts 13 and 14 (generic butt rubbing), Counts 19 through 21 (leg rubbing), and Count 22 (shirt lifting)" if it determined these acts were " 'en route' " or incidental touching rather than separate acts of fondling.

66

Here, the appellate record does not show the tactical reason for counsel's failure to file a motion for new trial. To decide defendant's contention on direct appeal would require us to speculate as to the reasons counsel failed to act, which we are prohibited from doing. (*People v. Diaz* (1992) 3 Cal.4th 495, 557 ["To engage in … speculations [about counsel's failure to act] would involve the reviewing court ' "in the perilous process of second-guessing" ' "].) Furthermore, we cannot conclude the record before us establishes it was reasonably probable the court would grant a motion for new trial on these counts. Rather, as we have already concluded there was sufficient evidence to support each of these counts. Thus, the appellate record does not establish counsel performed deficiently by failing to bring a new trial motion, or that such a motion likely would have been granted. (*People v. Smithey* (1999) 20 Cal.4th 936, 1012.)

We reject Baltezor's contention.

## D. Defendant's Remaining Claims Fail for Lack of Prejudice

We have also addressed and rejected Baltezor's remaining claims on the merits despite his counsel's alleged failure to object. Specifically, we have already concluded Baltezor was not prejudiced by the inclusion of CALCRIM No. 207 in the jury instructions or his counsel's brief misstatement of the age element in closing in the context of the rest of his argument. We have also concluded the court's decisions not to stay the sentences on certain counts pursuant to section 654 and to run Baltezor's sentences consecutively are supported by the record, and we cannot conclude it is reasonably probable a different judgment would have resulted if defense counsel had objected. Indeed, defense counsel did request concurrent sentences at sentencing and highlighted the factors in mitigation which the court acknowledged. However, counsel's argument did not ultimately affect the court's decision to run the sentences on each count consecutively. Accordingly, we cannot conclude Baltezor has met his burden of establishing he was prejudiced by defense counsel's alleged ineffectiveness.

## XI. The Matter Should be Remanded for the Court to Consider Restitution Award

Baltezor next asserts, the probation report recommended direct restitution to the California Victim Compensation Board in the sum of $3,099, but the court did not impose a direct restitution award. Rather, at the sentencing hearing, the court noted restitution to the victim and the government would "remain open." The abstract of judgment and sentencing minute order, however, reflect an award of direct restitution in the sum of $3,099. Accordingly, Baltezor argues the abstract of judgment and sentencing minute order must be amended to comport with the trial court's oral pronouncement and the subsequent restitution order should be deemed invalid. We agree.

"The record of the oral pronouncement of the court controls over the clerk's minute order." (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2.) Additionally, "[w]hen an abstract of judgment does not reflect the actual sentence imposed in the trial judge's verbal pronouncement, this court has the inherent power to correct such clerical error on appeal, whether on our own motion or upon application of the parties." (*People v. Jones* (2012) 54 Cal.4th 1, 89.)

Here, the court orally pronounced at the sentencing hearing that "[r]estitution to the victim and the government will remain open," though the sentencing minute order and abstract of judgment reflect a victim restitution award of $3,099. Thus, the victim restitution award listed in the abstract of judgment and sentencing minute order must be stricken and updated to correctly reflect the court's oral pronouncement.

Section 1202.4, subdivision (f), in conjunction with section 1202.46, expressly authorizes a trial court to issue an open-ended victim restitution order and maintain jurisdiction to permit it to impose or modify the appropriate amount of restitution once the victim's losses can be determined. (See §§ 1202.4, subd. (f), 1202.46.) When the amount of victim restitution is determined, Baltezor has the right to a hearing before a judge to dispute the determination of the amount of restitution. (See § 1202.4, subd.

68

(f)(1).)  Thus, Baltezor is currently on notice this matter is not closed, and he is entitled to notice and a hearing once the amount of restitution is determined.

## XII.  Sentence on Count 2 Was Not Unauthorized

In his final issue, Baltezor argues his sentence on count 2 was unauthorized because the court awarded him "no credits" against that sentence resulting in a life sentence with an irreducible mandatory minimum term of 15 years.  He argues the term "no credit" implies credits cannot reduce the term in any way, by credit for time served, presentence conduct credit, or prison work credit.

Here, the court sentenced Baltezor to a base term of six years on count 3 with "a total of 707 days credits."  It then sentenced Baltezor to consecutive, one-third, midterm sentences of two years on counts 4 through 22 and a consecutive, one-third, midterm sentence of eight months on count 25.  On count 2, the court sentenced Baltezor to a term of "15 years to life in prison, no credits."

Section 2900.5 provides for the application of custody credit to a defendant's term of imprisonment:  "In all felony … convictions, … when the defendant has been in custody … all days of custody of the defendant … shall be credited upon his or her term of imprisonment … in the discretion of the court imposing the sentence."  (§ 2900.5, subd. (a).)  "Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed."  (*Id.* at subd. (b).)

Here, Baltezor had a total of 707 presentence custody credits which were applied to his determinate term.  Baltezor points us to no authority, nor are we aware of any, that requires the trial court to apportion half of Baltezor's presentence custody credits to his determinate and half to the base of his indeterminate term.  Baltezor also does not suggest he was entitled to additional presentence custody credits than were awarded.  On this record, we find no error in the manner the presentence custody credits were applied.

We reject Baltezor's contention.

## DISPOSITION

We reverse Baltezor's conviction of count 9 and remand to the trial court for resentencing and for further proceedings regarding victim restitution. In all other respects, we affirm the judgment.

SMITH, J.

WE CONCUR:

FRANSON, Acting P.J.

PEÑA, J.